IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CITY OF ST. LOUIS,<br><br>and<br><br>MEGAN E. GREEN,<br><br>　　　Plaintiffs,<br><br>v.<br><br>STATE OF MISSOURI,<br><br>　　　Defendant. | Case No. 4:25-CV-00498 |

### COMPLAINT

COME NOW Plaintiffs City of St. Louis (the "City") and Megan E. Green ("Green") and for their Complaint state as follows:

### INTRODUCTION

1. Defendant State of Missouri (the "State") has enacted legislation, House Bill Number 495 of the 103rd General Assembly (the "HB 495"), which, among other provisions, would place the City's police force (the "Police Force") under the governance and control of a newly constituted State Board of Police Commissioners (the "State Board"). The provisions of HB 495 relating to the governance and control of the Police Force by the State Board are referred to collectively as the "State Takeover Law."

2. Plaintiffs bring this action against the State seeking a declaration of the State Takeover Law's invalidity and an injunction against its enforcement and implementation on the grounds that the State Takeover Law violates (1) Green's freedoms of expression, assembly, association, and petition, and (2) the Missouri Constitution's prohibition on unfunded state mandates of local activities and services.

## PARTIES

3. Plaintiff City of St. Louis is a constitutional charter city organized under the laws of the State of Missouri.

4. Plaintiff Megan E. Green is the duly elected President of the St. Louis Board of Aldermen, i.e., an officer of the City, and a resident taxpayer of the City of St. Louis.

5. Defendant State of Missouri is a political body organized and existing under the Missouri Constitution and the United States Constitution.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over the cause of action asserted in this action arising under the United States Constitution. 28 U.S.C. § 1331.

7. This Court has "supplemental jurisdiction over all other claims" in this action because the other claims arise out of the same newly enacted law and are intertwined with the federal questions raised in this complaint and therefore "form part of the same case or controversy." 28 U.S.C. § 1367(a).

8. This Court is empowered to grant declaratory relief under 28 U.S.C. § 2201.

9. Venue is proper under 28 U.S.C. § 1391.

## FACTUAL AND STATUTORY BACKGROUND

10. From the Civil War era until 2012, the City's police force was under the governance and control of a State Board of Police Commissioners.

11. On November 6, 2012, the people of Missouri voted on Proposition A, a statewide ballot initiative to amend the laws of the State to:

- allow any city not within a county such as the City of St. Louis the option of transferring certain obligations and control of the city's police force from the board of police commissioners currently appointed by the governor to the city and establishing a municipal police force;
- establish certain procedures and requirements for governing such a municipal police force including residency, rank, salary, benefits, insurance, and pension; and

- prohibit retaliation against any employee of such municipal police force who reports conduct believed to be illegal to a superior, government agency, or the press[.]

Mo. Sec. St., https://www.sos.mo.gov/elections/2012ballot.

12. Proposition A passed by a nearly two-to-one vote with 63.9% in favor and 36.1% opposed, enacting the Statutory Amendment to RSMo. Chapters 83, 84, 86, and 105, Relating to Municipal Police Force (the "Local Control Law").

13. Pursuant to the Local Control Law, the City established the Police Force under the governance and control of the City's municipal government.

14. Under the City's governance and control, the Police Force remains in place to this day, and through the hard work of its uniformed officers, civilian staff, and its partners throughout City government, overall crime in the City is trending downward. In fact, in 2024, the City saw fewer homicides than in any year since 2013.

15. Despite the overwhelming popular vote enacting the Local Control Law, and despite the City's successful and ongoing crime reduction efforts, the State enacted HB 495, which was passed by the General Assembly on March 12, 2025. It was signed into law by the Governor on March 26, 2025. HB 495 repealed the Local Control Law, and the State Takeover Law provides that the Police Force will be placed under the governance and control of a newly formed State Board of Police Commissioners.

16. The full text of the HB 495 is attached hereto as Exhibit 1, but certain key passages at issue in this action are quoted below.

- ". . . nor shall the cities or any officer or agent of the corporation of the cities, or the mayor thereof, in any manner impede, obstruct, hinder, or interfere with the boards of police, any officer, agent, or servant thereof or thereunder." § 84.012.

- "In all cities not within a county, there shall be, and is hereby established, within and for said cities, a board of police commissioners . . . to be the governing body of the permanent police force[.]" § 84.020.1.

3

- "The board shall consist of six commissioners, one of whom is the mayor of a city not within a county[.] . . . The mayor of a city not within a county shall automatically be a member of the board[.]" § 84.020.2.

- "[The] municipal assembly or common council shall appropriate a minimum sum equal to the following percentages of the city's general revenue[.]" § 84.160.3 (see percentages in full text, Exhibit 1).

- "Any officer or servant of the mayor or common council or municipal assembly of the cities, or other persons whatsoever, who forcibly resists or obstructs the execution or enforcement of any of the provisions of sections 84.012 to 84.340 or relating to the same, or who disburses or fails to disburse any money in violation thereof, or who hinders or obstructs the organization or maintenance of the board of police commissioners or the police force therein provided to be organized and maintained, or who maintains or controls any police force other than the one therein provided for, or who delays or hinders the due enforcement of sections 84.012 to 84.340 by failing or neglecting to perform the duties by such sections imposed upon him or her, shall be subject to a penalty of one thousand dollars for each offense, recoverable by the board by action at law in the name of the state, and shall forever thereafter be disqualified from holding or exercising any office or employment whatsoever under the mayor or common council or municipal assembly of such cities, or under sections 84.012 to 84.340[.]" § 84.225.

17.    Through this action, the City and Green seek declaratory and injunctive relief on the grounds that the State Takeover Law violates freedoms of expression, assembly, association, and petition of Green as well as other officers of the City and violates other unambiguous prohibitions in the Missouri Constitution.

**COUNT I – VIOLATION OF GREEN'S FREEDOMS OF EXPRESSION, ASSOCATION, ASSEMBLY, AND PETITION**

18.    The First Amendment of the United States Constitution and Article I, Sections 8 and 9 of the Missouri Constitution guarantee the freedoms of expression, of peaceable assembly, association, and to petition the government for the redress of grievances. A statutory prohibition is unconstitutionally overbroad when it prohibits protected expression and conduct in addition to properly regulated, unprotected conduct. Similarly, a statutory prohibition is unconstitutionally vague when the prohibited conduct is not clearly defined.

4

19.     The State Takeover Law prohibits officers of the City, including Green, from any action that could be found to "in *any manner* impede, obstruct, hinder, or interfere" with the State Board. § 84.012 (emphasis added).

20.     The State Takeover Law also imposes monetary penalties and disqualification from office if any officer of the City "forcibly resists or obstructs the execution or enforcement of any of the provisions of sections 84.012 to 84.340" or "hinders or obstructs the organization or maintenance of the board of police commissioners or the police force" or "delays or hinders the due enforcement of sections 84.012 to 84.340 by failing or neglecting to perform the duties by such sections imposed upon him or her." § 84.225.

21.     While it certainly regulates unprotected conduct (e.g., destroying public property used by the State Board), the broad sweep of the State Takeover Law's prohibitory language also unconstitutionally applies to speech and conduct protected by Green's freedoms of expression, of peaceable assembly, and to petition for redress of grievances.

22.     Further, the State Takeover Law does not clearly define what constitutes conduct that "hinders" or "obstructs" or "delays" or "impedes" or "interferes" with State Board's business or the implementation of the State Takeover Law. The vagueness of these already broad terms is exacerbated by the State Takeover Law's prohibition of doing the prohibited things "in any way."

23.     The application of the State Takeover Law's prohibitory provisions to protected expression and conduct is neither attenuated nor fanciful; the overbroad and vague language of the State Takeover Law on its face applies to several kinds protected expression and conduct.

24.     Green could be found to have violated the State Takeover Law and could be subject to monetary penalties and disqualification from office if, in exercising her freedom of expression, she challenged, or even criticized actions of the Board, and was therefore found to have "hindered"

or "obstructed" or "delayed" the enforcement of the State Takeover Law or the maintenance or organization of the State Board or Police Force. Therefore, the State Takeover Law illegally burdens Green's freedom of expression.

25. Similarly, if the State Board were to take actions that Green believed were illegal, were unjust, or were contrary to the interests of the City, Green would be subject to monetary penalties and disqualification from office if she peacefully protested the actions of the State Board or participated in political associations challenging actions of the State Board if such protests or challenges were found to have "hindered" or "obstructed" or "delayed" the enforcement of the State Takeover Law or the maintenance or organization of the State Board or Police Force. Therefore, the State Takeover Law illegally burdens Green's freedoms of peaceable assembly and political association.

26. Finally, under the plain language of Section 84.225, Green would be subject to monetary penalties and disqualification from office for initiating legal actions such as this one to invalidate, enjoin, or otherwise challenge the implementation of the State Takeover Law or the actions of the State Board if such actions had the effect of "hindering" or "obstructing" or "delaying" the enforcement of the State Takeover Law or the maintenance or organization of the State Board or Police Force. Therefore, the State Takeover Law illegally burdens Green's freedom to petition the government for the redress of grievances.

### COUNT II – VIOLATION OF MISSOURI CONSTITUTION'S PROHIBITION ON UNFUNDED STATE MANDATES OF LOCAL ACTIVITY

27. Known as the "Hancock Amendment," Article X, Section 21 of the Missouri Constitution reads in full:

> 1. The state is hereby prohibited from reducing the state financed proportion of the costs of any existing activity or service required of counties and other political subdivisions. A new activity or service or **an increase in the level of any activity**

6

**or service beyond that required by existing law shall not be required by the general assembly** or any state agency of counties or other political subdivisions, unless a state appropriation is made and disbursed to pay the county or other political subdivision for any increased costs.

2. Notwithstanding the foregoing prohibitions, before December 31, 2026, the general assembly **may by law increase minimum funding for a police force established by a state board of police commissioners** to ensure such police force has additional resources to serve its communities.

Mo. Const. art. X, § 21 (emphasis added).

28. The Hancock Amendment prohibits the State from imposing unfunded mandates on political subdivisions such as the City. Taxpayers, such as Green, have standing to challenge such unfunded mandates under Article X, Section 23.

29. Subpart 2 of the Hancock Amendment was added to the Missouri Constitution via a ballot measure that was expressly for the purpose of authorizing laws to *increase* the already existing minimum police funding requirement already applicable to Kansas City, Missouri:

**Official Ballot Title:**

Shall the Missouri Constitution be amended to authorize laws, passed before December 31st, 2026, that increase minimum funding for a police force established by a state board of police commissioners to ensure such police force has additional resources to serve its communities?

This would authorize a law passed in 2022 increasing required funding by the City of Kansas City for police department requests from 20% of general revenue to 25%, an increase of $38,743,646, though the City previously provided that level of funding voluntarily. No other state or local governmental entities estimate costs or savings.

**Fair Ballot Language:**

A "yes" vote will amend the Missouri Constitution to allow the general assembly by law to increase the minimum funding for a police force established by the state board of police commissioners to ensure such police force has additional resources to serve its communities. Currently the only police force established by the state board of police commissioners is found in Kansas City, Missouri.

>A "no" vote will not amend the Missouri Constitution regarding the funding for a police force established by the state board of police commissioners.
>
>If passed, this measure will have no impact on taxes.

Mo. Sec. St., https://www.sos.mo.gov/elections/petitions/2024BallotMeasures.

30. Missouri voters narrowly adopted the amendment by a vote of 51.13% in favor and 48.87% opposed on August 6, 2024.

31. The State Takeover Law imposes an unfunded mandate on the City creating new minimum funding requirements that the City must appropriate for the Police Force. The State Takeover Law does not fall within the exception in subpart 2 of the Hancock Amendment, and therefore, its unfunded mandate violates the Missouri Constitution.

32. The State Takeover Law does not fall within the exception in subpart 2 of the Hancock Amendment because subpart 2 only authorizes laws that *increase* minimum police funding requirements. An increase of a minimum funding requirement presumes that such a minimum funding requirement already exists. Subpart 2 of the Hancock Amendment does not authorize laws *imposing new* minimum funding requirements. Prior to the State Takeover Law, the City was not subject to a minimum police funding requirement, and therefore, the State Takeover Law's imposition of new minimum police funding requirements is not authorized by subpart 2 of the Hancock Amendment.

33. Additionally, the State Takeover Law does not fall within the exception in subpart 2 of the Hancock Amendment because subpart 2 only applies to "a police force established by a state board of police commissioners." The State Takeover Law does not contemplate that the newly constituted State Board will "establish" a police force. Instead, Section 84.325 expressly provides that the State Board will "assume control" of the Police Force, which was previously established by the City under the Local Control Law. The State Takeover Law's scheme of the State Board

"assuming control" of the existing Police Force is in contrast with the law applicable to Kansas City:

> To enable the board of police to perform the duties imposed upon them, they are hereby authorized and required, as speedily as may be, to provide for the appointment, enrollment and employment of a permanent police force for the respective cities for which they are appointed to serve, which they shall organize, uniform, equip and arm as they may judge necessary[.]

RSMo. § 84.470. In other words, subpart 2 of the Hancock Amendment, which was adopted to authorize laws relating to Kansas City, expressly addresses the funding of police forces that were "established" by a state board, and the statute applicable to Kansas City explains what it means to establish such a police force (i.e., appointing, enrolling, employing, organizing, uniforming, equipping, and arming it), rather than "assuming control" of one already established.

34. Because the imposition of new minimum police funding is not an authorized "increase" of such a minimum requirement and because the Police Force is not one "established by a state board of police commissioners," subpart 2 of the Hancock Amendment is inapplicable, and the State Takeover Law's unfunded mandate violates the Missouri Constitution.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs City of St. Louis and Megan E. Green pray that this Court enter judgment in their favor, ordering and declaring that:

   a. The State Takeover Law provisions found in Sections 84.012, 84.020, 84.030, 84.100, 84.150, 84.160, 84.170, 84.225, and 84.325 of HB 495 are invalid under the United States Constitution and the Missouri Constitution because the overbreadth and vagueness of their prohibitory provisions violate the freedoms of expression, assembly, association, and petition of Green, an officer of the City;

9

b. The State Takeover Law provisions found in Sections 84.012, 84.020, 84.030, 84.100, 84.150, 84.160, 84.170, 84.225, and 84.325 of HB 495 are invalid under the Missouri Constitution because they violate Article X, Section 21's prohibition on unfunded mandates of political subdivisions.

c. Enforcement of the State Takeover Law provisions found in Sections 84.012, 84.020, 84.030, 84.100, 84.150, 84.160, 84.170, 84.225 is permanently enjoined.

d. Plaintiffs are entitled to an award of costs and attorneys' fees.

Dated:  April 14, 2025                                     Respectfully submitted,

**SHEENA HAMILTON,
CITY COUNSELOR**

By: */s/ Nathan S. Puckett*
Nathan S. Puckett                    #73417 (MO)
***Assistant City Counselor, Affirmative Litigation Unit***

314 City Hall
1200 Market Street
St. Louis, Missouri 63103
(314) 622-3361 (telephone)
(314) 622-4956 (facsimile)
puckettn@stlouis-mo.gov

*Attorney for Plaintiff City of St. Louis*

By: */s/ Charles W. Hatfield*
Charles W. Hatfield                    #40363 (MO)
***Stinson, LLP***

230 W. McCarty Street
Jefferson City, Missouri 65101
(573) 636-6827 (telephone)
chuck.hatfield@stinson.com

*Attorney for Plaintiff Megan E. Green*