# EXHIBIT 1

(House Bill No. 495)

FIRST REGULAR SESSION

[TRULY AGREED TO AND FINALLY PASSED]

SENATE SUBSTITUTE NO. 2 FOR

SENATE COMMITTEE SUBSTITUTE FOR

HOUSE COMMITTEE SUBSTITUTE NO. 2 FOR

# HOUSE BILL NO. 495

## 103RD GENERAL ASSEMBLY

1623S.12T                                        2025

## AN ACT

To repeal sections 43.503, 43.505, 56.265, 56.265, 56.750, 57.010, 82.1000, 84.020, 84.030,
84.100, 84.150, 84.160, 84.170, 84.175, 84.240, 84.341, 84.342, 84.343, 84.344,
84.345, 84.346, 84.347, 105.726, 217.825, 217.827, 217.829, 217.831, 217.833,
217.835, 217.837, 217.839, 217.841, 304.012, 455.095, 513.605, 556.061, 566.210,
566.211, 568.045, 570.030, 574.050, 575.133, 575.150, 576.030, 577.150, 590.040,
595.209, and 650.058, RSMo, and section 56.265 as enacted by senate bill no. 672,
ninety-seventh general assembly, second regular session, and section 56.265 as
enacted by senate bill no. 275, ninetieth general assembly, first regular session, and to
enact in lieu thereof forty-two new sections relating to public safety, with penalty
provisions and an emergency clause for certain sections.

*Be it enacted by the General Assembly of the state of Missouri, as follows:*

        Section A.  Sections 43.503, 43.505, 56.265, 56.265, 56.750, 57.010, 82.1000, 84.020,
2  84.030, 84.100, 84.150, 84.160, 84.170, 84.175, 84.240, 84.341, 84.342, 84.343, 84.344,
3  84.345, 84.346, 84.347, 105.726, 217.825, 217.827, 217.829, 217.831, 217.833, 217.835,
4  217.837, 217.839, 217.841, 304.012, 455.095, 513.605, 556.061, 566.210, 566.211, 568.045,
5  570.030, 574.050, 575.133, 575.150, 576.030, 577.150, 590.040, 595.209, and 650.058,
6  RSMo, and section 56.265 as enacted by senate bill no. 672, ninety-seventh general assembly,
7  second regular session, and section 56.265 as enacted by senate bill no. 275, ninetieth general
8  assembly, first regular session, are repealed and forty-two new sections enacted in lieu

EXPLANATION —   Matter enclosed in bold-faced brackets [thus] in the above bill is not enacted and is
intended to be omitted from the law. Matter in **bold-face** type in the above bill is proposed language.

SS #2 SCS HCS #2 HB 495                    2

9  thereof, to be known as sections 43.503, 43.505, 44.087, 56.265, 56.750, 57.010, 82.1000,
10  84.012, 84.020, 84.030, 84.100, 84.150, 84.160, 84.170, 84.225, 84.325, 105.726, 191.1005,
11  217.451, 221.108, 221.520, 221.523, 304.012, 304.145, 455.095, 491.065, 513.605, 556.061,
12  566.210, 566.211, 568.045, 570.030, 575.133, 575.150, 576.030, 577.150, 590.040, 590.208,
13  595.209, 595.325, 650.058, and 1, to read as follows:

1         43.503.  1.  For the purpose of maintaining complete and accurate criminal history
2  record information, all police officers of this state, the clerk of each court, the department of
3  corrections, the sheriff of each county, the chief law enforcement official of a city not within a
4  county and the prosecuting attorney of each county or the circuit attorney of a city not within
5  a county shall submit certain criminal arrest, charge, and disposition information to the
6  central repository for filing without undue delay in the form and manner required by sections
7  43.500 to 43.651.

8         2.  All law enforcement agencies making misdemeanor and felony arrests as
9  determined by section 43.506 shall furnish without undue delay, to the central repository,
10  fingerprints, photograph, and if available, any other unique biometric identification collected,
11  charges, appropriate charge codes, and descriptions of all persons who are arrested for such
12  offenses on standard fingerprint forms supplied or approved by the highway patrol or
13  electronically in a format and manner approved by the highway patrol and in compliance with
14  the standards set by the Federal Bureau of Investigation in its Automated Fingerprint
15  Identification System or its successor program.  All such agencies shall also notify the central
16  repository of all decisions not to refer such arrests for prosecution.  An agency making such
17  arrests may enter into arrangements with other law enforcement agencies for the purpose of
18  furnishing without undue delay such fingerprints, photograph, and if available, any other
19  unique biometric identification collected, charges, appropriate charge codes, and descriptions
20  to the central repository upon its behalf.

21         3.  **In order for the Missouri office of prosecution services to maintain complete**
22  **and accurate statewide reports as required by section 56.750, on or before January 1,**
23  **2028, and thereafter, all police officers of this state, the sheriff and each deputy sheriff of**
24  **each county, and the chief law enforcement official of a city not within a county and his**
25  **or her officers shall submit referrals for any traffic violation, ordinance violation, or**
26  **misdemeanor or felony offense referred to a prosecuting or circuit attorney in the form**
27  **and manner approved by the Missouri office of prosecution services as required by**
28  **subdivision (7) of subsection 1 of section 56.750.  At a minimum, any referral to a**
29  **prosecuting attorney or circuit attorney for a felony offense shall include a probable**
30  **cause statement and an investigative report.  Any law enforcement agency that violates**
31  **this subsection shall be ineligible to receive state or federal funds that would otherwise**
32  **be paid to such agency for law enforcement, safety, or criminal justice purposes.**

33      **4.**  In instances where an individual less than seventeen years of age and not currently
34   certified as an adult is taken into custody for an offense which would be a felony if committed
35   by an adult, the arresting officer shall take fingerprints for the central repository.  These
36   fingerprints shall be taken on fingerprint cards supplied by or approved by the highway patrol
37   or transmitted electronically in a format and manner approved by the highway patrol and in
38   compliance with the standards set by the Federal Bureau of Investigation in its Automated
39   Fingerprint Identification System or its successor program.  The fingerprint cards shall be so
40   constructed that the name of the juvenile should not be made available to the central
41   repository.  The individual's name and the unique number associated with the fingerprints and
42   other pertinent information shall be provided to the court of jurisdiction by the agency taking
43   the juvenile into custody.  The juvenile's fingerprints and other information shall be
44   forwarded to the central repository and the courts without undue delay.  The fingerprint
45   information from the card shall be captured and stored in the automated fingerprint
46   identification system operated by the central repository.  In the event the fingerprints are
47   found to match other tenprints or unsolved latent prints, the central repository shall notify the
48   submitting agency who shall notify the court of jurisdiction as per local agreement.  Under
49   section 211.031, in instances where a juvenile over fifteen and one-half years of age is alleged
50   to have violated a state or municipal traffic ordinance or regulation, which does not constitute
51   a felony, and the juvenile court does not have jurisdiction, the juvenile shall not be
52   fingerprinted unless certified as an adult.

53      **[4.] 5.**  Upon certification of the individual as an adult, the certifying court shall order
54   a law enforcement agency to immediately fingerprint and photograph the individual and
55   certification papers will be forwarded to the appropriate law enforcement agency with the
56   order for fingerprinting.  The law enforcement agency shall submit such fingerprints,
57   photograph, and certification papers to the central repository within fifteen days and shall
58   furnish the offense cycle number associated with the fingerprints to the prosecuting attorney
59   or the circuit attorney of a city not within a county and to the clerk of the court ordering the
60   subject fingerprinted.  If the juvenile is acquitted of the crime and is no longer certified as an
61   adult, the prosecuting attorney shall notify within fifteen days the central repository of the
62   change of status of the juvenile.  Records of a child who has been fingerprinted and
63   photographed after being taken into custody shall be closed records as provided under section
64   610.100 if a petition has not been filed within thirty days of the date that the child was taken
65   into custody; and if a petition for the child has not been filed within one year of the date the
66   child was taken into custody, any records relating to the child concerning the alleged offense
67   may be expunged under the procedures in sections 610.122 to 610.126.

68      **[5.] 6.**  The prosecuting attorney of each county or the circuit attorney of a city not
69   within a county or the municipal prosecuting attorney shall notify the central repository on

70  standard forms supplied by the highway patrol or in a manner approved by the highway patrol
71  of his or her decision to not file a criminal charge on any charge referred to such prosecuting
72  attorney or circuit attorney for criminal charges.  All records forwarded to the central
73  repository and the courts by prosecutors or circuit attorneys as required by sections 43.500 to
74  43.530 shall include the state offense cycle number of the offense, the charge code for the
75  offense, and the originating agency identifier number of the reporting prosecutor, using such
76  numbers as assigned by the highway patrol.

77  [6.] **7.**  The clerk of the courts of each county or city not within a county or municipal
78  court clerk shall furnish the central repository, on standard forms supplied by the highway
79  patrol or in a manner approved by the highway patrol, with a record of all charges filed,
80  including all those added subsequent to the filing of a criminal court case, amended charges,
81  and all final dispositions of cases for which the central repository has a record of an arrest or a
82  record of fingerprints reported pursuant to sections 43.500 to 43.506.  Such information shall
83  include, for each charge:

84      (1)  All judgments of not guilty, acquittals on the ground of mental disease or defect
85  excluding responsibility, judgments or pleas of guilty including the sentence, if any, or
86  probation, if any, pronounced by the court, nolle pros, discharges, releases and dismissals in
87  the trial court;

88      (2)  Court orders filed with the clerk of the courts which reverse a reported conviction
89  or vacate or modify a sentence;

90      (3)  Judgments terminating or revoking a sentence to probation, supervision or
91  conditional release and any resentencing after such revocation; and

92      (4)  The offense cycle number of the offense, and the originating agency identifier
93  number of the sentencing court, using such numbers as assigned by the highway patrol.

94  [7.] **8.**  The clerk of the courts of each county or city not within a county shall furnish,
95  to the department of corrections or department of mental health, court judgment and sentence
96  documents and the state offense cycle number and the charge code of the offense which
97  resulted in the commitment or assignment of an offender to the jurisdiction of the department
98  of corrections or the department of mental health if the person is committed pursuant to
99  chapter 552.  This information shall be reported to the department of corrections or the
100  department of mental health at the time of commitment or assignment.  If the offender was
101  already in the custody of the department of corrections or the department of mental health at
102  the time of such subsequent conviction, the clerk shall furnish notice of such subsequent
103  conviction to the appropriate department by certified mail, return receipt requested, or in a
104  manner and format mutually agreed to, within fifteen days of such disposition.

105  [8.] **9.**  Information and fingerprints, photograph and if available, any other unique
106  biometric identification collected, forwarded to the central repository, normally obtained from

107  a person at the time of the arrest, may be obtained at any time the subject is in the criminal
108  justice system or committed to the department of mental health.  A law enforcement agency
109  or the department of corrections may fingerprint, photograph, and capture any other unique
110  biometric identification of the person unless collecting other unique biometric identification
111  of the person is not financially feasible for the law enforcement agency, and obtain the
112  necessary information at any time the subject is in custody.  If at the time of any court
113  appearance, the defendant has not been fingerprinted and photographed for an offense in
114  which a fingerprint and photograph is required by statute to be collected, maintained, or
115  disseminated by the central repository, the court shall order a law enforcement agency or
116  court marshal to fingerprint and photograph immediately the defendant.  The order for
117  fingerprints shall contain the offense, charge code, date of offense, and any other information
118  necessary to complete the fingerprint card.  The law enforcement agency or court marshal
119  shall submit such fingerprints, photograph, and if available, any other unique biometric
120  identification collected, to the central repository without undue delay and within thirty days
121  and shall furnish the offense cycle number associated with the fingerprints to the prosecuting
122  attorney or the circuit attorney of a city not within a county and to the court clerk of the court
123  ordering the subject fingerprinted.

124      **[9.] 10.**  The department of corrections and the department of mental health shall
125  furnish the central repository with all information concerning the receipt, escape, execution,
126  death, release, pardon, parole, commutation of sentence, granting of executive clemency,
127  legal name change, or discharge of an individual who has been sentenced to that department's
128  custody for any offenses which are mandated by law to be collected, maintained or
129  disseminated by the central repository.  All records forwarded to the central repository by the
130  department as required by sections 43.500 to 43.651 shall include the offense cycle number of
131  the offense, and the originating agency identifier number of the department using such
132  numbers as assigned by the highway patrol.

1      43.505.  1.  The department of public safety is hereby designated as the central
2  repository for the collection, maintenance, analysis and reporting of crime incident activity
3  generated by law enforcement agencies in this state.  The department shall develop and
4  operate a uniform crime reporting system that is compatible with the national uniform crime
5  reporting system operated by the Federal Bureau of Investigation.

6      2.  The department of public safety shall:

7      (1)  Develop, operate and maintain an information system for the collection, storage,
8  maintenance, analysis and retrieval of crime incident and arrest reports from Missouri law
9  enforcement agencies;

10    (2)  Compile the statistical data and forward such data as required to the Federal
11  Bureau of Investigation or the appropriate Department of Justice agency in accordance with
12  the standards and procedures of the national system;

13    (3)  Provide the forms, formats, procedures, standards and related training or training
14  assistance to all law enforcement agencies in the state as necessary for such agencies to report
15  incident and arrest activity for timely inclusion into the statewide system;

16    (4)  Annually publish a report on the nature and extent of crime and submit such
17  report to the governor and the general assembly.  Such report and other statistical reports shall
18  be made available to state and local law enforcement agencies and the general public through
19  an electronic or manual medium;

20    (5)  Maintain the privacy and security of information in accordance with applicable
21  state and federal laws, regulations and orders; and

22    (6)  Establish such rules and regulations as are necessary for implementing the
23  provisions of this section.  Any rule or portion of a rule, as that term is defined in section
24  536.010, that is created under the authority delegated in this section shall become effective
25  only if it complies with and is subject to all of the provisions of chapter 536 and, if applicable,
26  section 536.028.  This section and chapter 536 are nonseverable and if any of the powers
27  vested with the general assembly pursuant to chapter 536 to review, to delay the effective date
28  or to disapprove and annul a rule are subsequently held unconstitutional, then the grant of
29  rulemaking authority and any rule proposed or adopted after August 28, 2000, shall be invalid
30  and void.

31    3.  Every law enforcement agency in the state shall:

32    (1)  Submit crime incident reports to the department of public safety on forms or in the
33  format prescribed by the department; and

34    (2)  Submit any other crime incident information which may be required by the
35  department of public safety**, including information pertaining to the citizen or
36  immigration status of any person arrested for an offense that is reportable under
37  section 43.506**.

38    4.  Any law enforcement agency that violates this section after December 31, 2021,
39  may be ineligible to receive state or federal funds which would otherwise be paid to such
40  agency for law enforcement, safety or criminal justice purposes.

    **44.087.  1.  The chief law enforcement executive for any law enforcement agency,
2  or such executive's designee, may request assistance from a law enforcement agency of
3  another jurisdiction, including a jurisdiction outside the state of Missouri but within the
4  United States.**

5    **2.  If a law enforcement officer makes an arrest or apprehension outside such
6  officer's jurisdiction, the offender shall be delivered to the first available law**

7  enforcement officer who is commissioned in the jurisdiction in which the arrest was
8  made.   The officer making the initial arrest or apprehension shall assist in the
9  preparation of any affidavits filed with the complaint or based on other evidence that
10  there is probable cause to believe that both a crime has been committed and the
11  defendant has committed such crime.

12      3.   For the purpose of liability, workers' compensation, and any other
13  employment-related matter, law enforcement officers remain employees of their
14  respective law enforcement agency throughout any request for assistance.   Qualified
15  immunity, sovereign immunity, official immunity, and the public duty rule shall apply to
16  the provisions of this section as interpreted by the federal and state courts of the
17  responding agency.

18      4.   Nothing in this section shall be construed to limit the actions of law
19  enforcement officers or agencies conducted in accordance with section 44.095 or 44.098,
20  or any other mutual aid agreement made under this chapter.

21      5.  The provisions of chapter 544 are applicable to any law enforcement officers
22  from jurisdictions located outside the state of Missouri, but within the United States,
23  who are acting pursuant to a request made under this section.

[56.265.  1.  The county prosecuting attorney in any county, other than
2  in a chartered county, shall receive an annual salary computed using the
3  following schedule, when applicable.  The assessed valuation factor shall be
4  the amount thereof as shown for the year immediately preceding the year for
5  which the computation is done.
6      (1)  For a full-time prosecutor the prosecutor shall receive
7  compensation equal to the compensation of an associate circuit judge;
8      (2)  For a part-time prosecutor:

| Assessed Valuation | | | Amount |
|---|---|---|---|
| $18,000,000 | to | 40,999,999 | $37,000 |
| 41,000,000 | to | 53,999,999 | 38,000 |
| 54,000,000 | to | 65,999,999 | 39,000 |
| 66,000,000 | to | 85,999,999 | 41,000 |
| 86,000,000 | to | 99,999,999 | 43,000 |
| 100,000,000 | to | 130,999,999 | 45,000 |
| 131,000,000 | to | 159,999,999 | 47,000 |
| 160,000,000 | to | 189,999,999 | 49,000 |
| 190,000,000 | to | 249,999,999 | 51,000 |
| 250,000,000 | to | 299,999,999 | 53,000 |
| 300,000,000 | or | more | 55,000 |

21    2. Two thousand dollars of the salary authorized in this section shall be
22    payable to the prosecuting attorney only if the prosecuting attorney has
23    completed at least twenty hours of classroom instruction each calendar year
24    relating to the operations of the prosecuting attorney's office when approved
25    by a professional association of the county prosecuting attorneys of Missouri
26    unless exempted from the training by the professional association.  The
27    professional association approving the program shall provide a certificate of
28    completion to each prosecuting attorney who completes the training program
29    and shall send a list of certified prosecuting attorneys to the treasurer of each
30    county.    Expenses  incurred  for  attending  the  training  session  may  be
31    reimbursed to the county prosecuting attorney in the same manner as other
32    expenses as may be appropriated for that purpose.
33    3. As used in this section, the term "prosecuting attorney" includes the
34    circuit attorney of any city not within a county.
35    4. The prosecuting attorney of any county which becomes a county of
36    the first classification during a four-year term of office or a county which
37    passed the proposition authorized by subsection 1 of section 56.363 shall not
38    be required to devote full time to such office pursuant to section 56.067 until
39    the beginning of the prosecuting attorney's next term of office or until the
40    proposition otherwise becomes effective.
41    5.  The  provisions  of  section  56.066  shall  not  apply  to  full-time
42    prosecutors who are compensated pursuant to subdivision (1) of subsection 1
43    of this section.]

56.265.  1.  The county prosecuting attorney in any county, other than in a chartered
2  county, shall receive an annual salary computed using the following schedule, when
3  applicable.  The assessed valuation factor shall be the amount thereof as shown for the year
4  immediately preceding the year for which the computation is done.

5    (1)  For a full-time prosecutor the prosecutor shall receive compensation equal to the
6  compensation of an associate circuit judge;

7    (2)  For a part-time prosecutor:

| Assessed Valuation | Amount |
|---|---|
| $18,000,000   to   40,999,999 | $37,000 |
| 41,000,000   to   53,999,999 | 38,000 |
| 54,000,000   to   65,999,999 | 39,000 |
| 66,000,000   to   85,999,999 | 41,000 |
| 86,000,000   to   99,999,999 | 43,000 |
| 100,000,000   to   130,999,999 | 45,000 |
| 131,000,000   to   159,999,999 | 47,000 |
| 160,000,000   to   189,999,999 | 49,000 |
| 190,000,000   to   249,999,999 | 51,000 |
| 250,000,000   to   299,999,999 | 53,000 |

| | |
|---|---:|
| 19 | 300,000,000  or  more                                    55,000 |

20     2.  Two thousand dollars of the salary **[authorized in this section]** shall be payable to
21 **[the] any** prosecuting attorney only if the prosecuting attorney has completed at least twenty
22 hours of classroom instruction each calendar year relating to the operations of the prosecuting
23 attorney's office when approved by a professional association of the county prosecuting
24 attorneys of Missouri unless exempted from the training by the professional association.  The
25 professional association approving the program shall provide a certificate of completion to
26 each prosecuting attorney who completes the training program and shall send a list of
27 certified prosecuting attorneys to the treasurer of each county **or city not within a county**.
28 Expenses incurred for attending the training session may be reimbursed to the **[county]**
29 prosecuting attorney in the same manner as other expenses as may be appropriated for that
30 purpose.

31     3.  **Each calendar year, five thousand dollars of the salary shall be payable to any**
32 **prosecuting attorney only if the prosecuting attorney has collected the data described in**
33 **subsection 2 of section 56.750 in a manner approved by the prosecutors coordinators**
34 **training council and makes the data described in subsection 2 of section 56.750 readily**
35 **accessible to the Missouri office of prosecution services.  The Missouri office of**
36 **prosecution services shall provide a certificate of compliance to each prosecuting**
37 **attorney who complies with this subsection and shall send a list of any certified**
38 **prosecuting attorney to the respective treasurer of each county or city not within a**
39 **county.**

40     **4.  For each calendar year, three thousand dollars of the salary shall be payable**
41 **to any prosecuting attorney only if the prosecuting attorney has provided discovery to**
42 **criminal defense attorneys who have entered an appearance on behalf of a defendant in**
43 **a manner approved by the prosecutors coordinators training council.  The Missouri**
44 **office of prosecution services shall provide a certificate of compliance to each**
45 **prosecuting attorney who complies with this subsection and shall send a list of any**
46 **certified prosecuting attorney to the respective treasurer of each county or city not**
47 **within a county.**

48     **5.**  As used in this section, the term "prosecuting attorney" includes the circuit attorney
49 of any city not within a county.

50     **[4.] 6.**  The prosecuting attorney of any county which becomes a county of the first
51 classification during a four-year term of office or a county which passed the proposition
52 authorized by **subsection 1 of** section 56.363 shall not be required to devote full time to such
53 office pursuant to section 56.067 until the beginning of the prosecuting attorney's next term of
54 office or until the proposition otherwise becomes effective.

55    [5.] **7.**  The provisions of section 56.066 shall not apply to full-time prosecutors who
56    are compensated pursuant to subdivision (1) of subsection 1 of this section.

      56.750.  **1.**  The "Missouri Office of Prosecution Services" is hereby established as an
2     autonomous entity in the Missouri attorney general's office.  It shall be the purpose of the
3     Missouri office of prosecution services to assist the prosecuting attorneys throughout the state
4     in their efforts against criminal activity in the state.  Such assistance may include:

5          (1)  The obtaining, preparing, supplementing, and disseminating of indexes to and
6     digests of the decisions of the supreme court and the court of appeals of Missouri and other
7     courts, and the statutes, and other legal authorities relating to criminal matters, and civil
8     matters concerning the duties of prosecuting attorneys and circuit attorney;

9          (2)  The preparation and distribution of model complaints, informations, indictments,
10    instructions, search warrants, interrogation advices, and other common and appropriate
11    documents employed in the administration of criminal justice;

12         (3)  The preparation and distribution of a basic prosecutor's manual and other
13    educational materials;

14         (4)  The promotion of and assistance in the training of prosecuting attorneys and
15    circuit attorney on a statewide basis;

16         (5)  The provision of legal research assistance to prosecuting attorneys and circuit
17    attorney;

18         (6)  The development, support and maintenance of automated case management and
19    criminal history reporting systems approved by the prosecutors coordinators training council
20    as the standard utilized by prosecuting attorneys and circuit attorney; [and]

21         (7)  **The development and approval of the form and uniform manner utilizing the
22    automated case management system in which all referrals required by section 43.503
23    will be submitted by any law enforcement agency to offices of a prosecuting attorney or
24    circuit attorney; and**

25         **(8)**  The provision of other assistance to prosecuting attorneys and circuit attorney that
26    is necessary for the successful implementation of sections 56.750 to 56.775**, including
27    members of the Missouri office of prosecution services serving as special prosecuting
28    attorneys and special assistant prosecuting attorneys,** or that hereinafter may be
29    authorized by law.

30         **2.  Beginning March 31, 2028, and by March thirty-first of each year thereafter,
31    the Missouri office of prosecution services shall compile a statewide report summarizing
32    from the automated case management system, approved by the prosecutors
33    coordinators training council as provided in subdivision (6) of subsection 1 of this
34    section for all offices of prosecuting or circuit attorneys, for the previous calendar year
35    the following information:**

36  **(1) The total number of felonies, misdemeanors, and infractions received by all**
37 **offices of prosecuting and circuit attorneys, including:**

38  **(a) The number of all referrals received from law enforcement;**

39  **(b) The number of all cases filed;**

40  **(c) The number of all cases refused;**

41  **(d) The number of all cases disposed; and**

42  **(e) The number of all cases under review on December thirty-first of the**
43 **calendar year being reported;**

44  **(2) Any information specific to felonies, misdemeanors, and infractions received**
45 **by all offices of prosecuting and circuit attorneys, including:**

46  **(a) The number of referrals received wherein the most serious charge was a**
47 **felony;**

48  **(b) The number of referrals received wherein the most serious charge was a**
49 **misdemeanor;**

50  **(c) The number of referrals received wherein the most serious charge was an**
51 **infraction;**

52  **(d) The number of referrals with all charges refused where in the most serious**
53 **charge referred was a felony;**

54  **(e) The number of referrals with all charges refused wherein the most serious**
55 **charge referred was a misdemeanor;**

56  **(f) The number of referrals with all charges refused wherein the most serious**
57 **charge referred was an infraction;**

58  **(g) The number of cases filed where in the most serious charge was a felony;**

59  **(h) The number of cases filed wherein the most serious charge was a**
60 **misdemeanor;**

61  **(i) The number of cases filed wherein the most serious charge was an infraction;**

62  **(j) The number of cases disposed wherein the most serious charge was a felony;**

63  **(k) The number of cases disposed wherein the most serious charge was a**
64 **misdemeanor; and**

65  **(l) The number of cases disposed wherein the most serious charge was an**
66 **infraction;**

67  **(3) All felonies, misdemeanors, and infractions received by all offices of**
68 **prosecuting and circuit attorneys by specific statute number and charge code, including:**

69  **(a) All charges received in referrals by statute number and charge code;**

70  **(b) All charges filed by statute number and charge code;**

71  **(c) All charges refused by statute number and charge code;**

72  **(d) All charges disposed by statute number and charge code; and**

SS #2 SCS HCS #2 HB 495                    12

73    **(e)  All charges under review on December thirty-first of the calendar year being**
74    **reported by statute number and charge code; and**

75    **(4)  Each case in which an informant, as such term is defined by section 491.065,**
76    **has been endorsed by the state to testify against a defendant's interest including:**

77    **(a)  The substance of the testimony; and**

78    **(b)  Any benefit that has been requested by or has been offered to the informant**
79    **as defined in section 491.065, and any benefit that may be provided at a future date in**
80    **connection with such testimony.**

81    **3.  Any information provided under subdivisions (1) to (4) of subsection 2 of this**
82    **section shall be compiled for each individual office of a prosecuting or circuit attorney.**
83    **The summary reports shall be considered a public record.  The individual data and**
84    **information compiled by and received from each office of a prosecuting or circuit**
85    **attorney is confidential and shall be a closed record and not subject to release under**
86    **section 610.100.**

87    **4.  Any information provided under subdivision (4) of subsection 2 of this section**
88    **is accessible by the prosecuting or circuit attorney or by any attorney who has entered**
89    **an appearance on behalf of a party to the case in which the informant is an endorsed**
90    **witness.**

       57.010.  1.  At the general election to be held in 1948, and at each general election
2     held every four years thereafter, the voters in every county in this state shall elect some
3     suitable person sheriff.  No person shall be eligible for the office of sheriff who has been
4     convicted of a felony.  Such person shall be a resident taxpayer and elector of said county,
5     shall have resided in said county for more than one whole year next before filing for said
6     office and shall be a person capable of efficient law enforcement.  When any person shall be
7     elected sheriff, such person shall enter upon the discharge of the duties of such person's office
8     as chief law enforcement officer of that county on the first day of January next succeeding
9     said election.

10    2.  No person shall be eligible for the office of sheriff who does not hold a valid peace
11    officer license pursuant to chapter 590.  Any person filing for the office of sheriff shall have a
12    valid peace officer license at the time of filing for office.  This subsection shall not apply to
13    the sheriff of any county of the first classification with a charter form of government with a
14    population over nine hundred thousand or of any city not within a county.

15    **3.  The sheriff of any city not within a county shall be required to hold a valid**
16    **peace officer license pursuant to chapter 590 within two years of being elected as sheriff.**

       82.1000.  1.  In addition to forfeiture proceedings pursuant to sections 513.600 to
2     513.645, the governing body of any constitutional charter city having a population of more
3     than one hundred thousand inhabitants and located within a county of the first classification

4   that adjoins no other county of the first classification may enact ordinances which would
5   subject to forfeiture any motor vehicle operated by a person with one or more prior
6   convictions for an intoxication-related traffic offense, as defined in section **[**577.023**]**
7   **577.001**, who is prohibited from obtaining a license to operate a motor vehicle by the director
8   of revenue pursuant to subdivision (9) or (10) **of subsection 1** of section 302.060, or who has
9   the person's license to operate a motor vehicle suspended or revoked, as a result of a finding
10  or a plea of guilty to:

11          (1)  Any intoxication-related traffic offense as defined in section **[**577.023**] 577.001**;
12  **[**or**]**

13          (2)  Involuntary manslaughter as a result of operating a motor vehicle while in an
14  intoxicated condition as defined in section **[**565.024**] 577.001;**

15          **(3)  Two or more violations of stunt driving or street takeover as provided in**
16  **section 304.145 committed on separate occasions where in each violation the person was**
17  **operating a vehicle and another person was injured or killed; or**

18          **(4)  The offense of aggravated fleeing a stop or detention of a motor vehicle as**
19  **provided in section 575.151**.

20

21  Such forfeiture pursuant to this subsection shall only be allowed if such person operates a
22  motor vehicle while the person's license to operate a motor vehicle is under such a suspension
23  or revocation.

24          2.  The ordinance allowing forfeitures pursuant to this section may also provide for the
25  impoundment and forfeiture of a motor vehicle operated by any person who is classified as a
26  prior offender or persistent offender pursuant to section 577.023 after the effective date of
27  such ordinance, except that a judgment of forfeiture may only be rendered if there is a
28  conviction of an intoxication-related traffic offense which causes the owner of the motor
29  vehicle to be classified as a prior or persistent offender.

30          3.  The ordinance allowing the forfeitures pursuant to this section may also provide for
31  the impoundment and forfeiture of a motor vehicle operated by any person who has
32  previously been convicted of two or more intoxication-related traffic offenses, as defined in
33  section **[**577.023**] 577.001**, and who thereafter, pursuant to a chemical test conducted in
34  accordance with sections 577.020 to 577.041, is determined upon probable cause to have been
35  driving a motor vehicle with a blood-alcohol concentration equal to or greater than the blood-
36  alcohol percentage concentration specified in subsection 1 of section 302.520, or any such
37  person who, pursuant to section 577.041, has been requested to submit to a chemical test as
38  described pursuant to that section, and refused to submit to such test.

39      4.  All forfeiture proceedings pursuant to this section shall be conducted in accordance
40  with sections 513.600 to 513.645, except the forfeiture proceeding shall be brought by the
41  city attorney for the city which enacted such ordinances.

42      5.  The ordinance shall also provide that any person claiming an ownership interest in
43  the motor vehicle subject to forfeiture shall have all the defenses to the forfeiture proceeding
44  available to them which they may be entitled to raise pursuant to sections 513.600 to 513.645.
45  The ordinance shall further provide that, in the event the title documents registered with the
46  department of revenue for the motor vehicle subject to forfeiture, at the time of the action
47  giving rise to the forfeiture proceeding, list persons as owners or co-owners of the vehicle in
48  addition to or other than the operator, and the nonoperator owner of the motor vehicle has not
49  previously been the operator or the owner of, a motor vehicle which has been the subject of a
50  forfeiture proceeding authorized by this section, the motor vehicle shall be returned to the
51  nonoperator registered owner and all costs associated with the seizure, towing, storage and
52  impoundment of the vehicle, and the payment of all court costs and reasonable attorney fees
53  associated with the forfeiture proceeding shall be paid by the owners or the operator of the
54  vehicle.  To be entitled to return of the vehicle all owners shall execute a written agreement
55  with the municipality stipulating and consenting to the seizure and forfeiture of the motor
56  vehicle in the event such motor vehicle is subsequently operated by the same operator under
57  circumstances which would allow the municipality to seek forfeiture of such vehicle pursuant
58  to an ordinance authorized by this section.

      **84.012.  In all cities of this state not within a county, the common council or**
2  **municipal assembly of such cities may pass ordinances for preserving order; securing**
3  **property and persons from violence, danger, or destruction; protecting public and**
4  **private property; and promoting the interests and ensuring the good governance of the**
5  **cities, but no ordinances heretofore passed, or that may hereafter be passed, by the**
6  **common council or municipal assembly of the cities shall, in any manner, conflict or**
7  **interfere with the powers or the exercise of the powers of the boards of police**
8  **commissioners of the cities as created by section 84.020, nor shall the cities or any officer**
9  **or agent of the corporation of the cities, or the mayor thereof, in any manner impede,**
10  **obstruct, hinder, or interfere with the boards of police, any officer, agent, or servant**
11  **thereof or thereunder.**

      84.020.  **1.**  In all cities [of this state that now have, or may hereafter attain, a
2  population of five hundred thousand inhabitants or over] **not within a county**, there shall be,
3  and is hereby established, within and for said cities, a board of police **commissioners**, to
4  consist of four **citizen** commissioners, as provided in sections 84.040 to 84.080, **to be the**
5  **governing body of the permanent police force pursuant to section 84.100,** together with
6  the mayor of said cities for the time being, or whosoever may be officially acting in that

SS #2 SCS HCS #2 HB 495                    15

7    capacity, and said board shall **annually** appoint one of its members as president, **[**and**]** one
8    member who shall act as vice president **[**during the absence of the president**], and one**
9    **member who shall act as board secretary**; and such president or vice president shall be the
10   executive officer of the board and shall act for it when the board is not in session.

11         **2.  The board shall consist of six commissioners, one of whom is the mayor of a**
12   **city not within a county, four citizen commissioners, and one nonvoting commissioner.**
13   **The nonvoting commissioner shall be a resident of a city not within a county or shall be**
14   **a resident of any county of this state that adjoins the city limits of a city not within a**
15   **county and who owns real property within a city not within a county and pays taxes on**
16   **such real property.  The nonvoting commissioner shall not vote on matters before the**
17   **commission, but may be counted for purposes of establishing a quorum and discussion,**
18   **including discussion in any closed meeting of the board.  Each citizen commissioner**
19   **shall be a resident of a city not within a county for no less than two years preceding his**
20   **or her appointment.  Except for the mayor, no commissioner shall be nominated for or**
21   **hold any other elective or appointed political office.  If any citizen commissioner is**
22   **nominated for or elected to any elective or appointed political office, such commissioner**
23   **shall forfeit the appointment and shall immediately vacate his or her office.  The mayor**
24   **of a city not within a county shall automatically be a member of the board, while the**
25   **remaining commissioners, including the nonvoting commissioner, shall be appointed by**
26   **the governor, with the advice and consent of the senate.**

27         **3.  Any member of the board, except for the mayor of a city not within a county,**
28   **may be removed for cause with the approval of a majority of the other board members,**
29   **but such member shall first be presented with a written statement of the reasons for**
30   **removal and shall have the opportunity for a hearing by the board to establish cause for**
31   **removal.  The decision for removal of a board member is final.  However, the removed**
32   **member may appeal their removal to the twenty-second judicial circuit court.**

33         **4.  A majority of the board shall constitute a quorum for the transaction of**
34   **business, but no action shall be taken by the board or deemed valid unless three**
35   **concurring votes are cast.**

36         **5.  The board shall have the power to summon and compel the attendance of**
37   **witnesses before the board and to compel the production of documents and other**
38   **evidence, whenever necessary in the discharge of its duties, and shall have the power to**
39   **administer oaths or affirmations to any person appearing or called before it.**

40         **6.  The board shall have the following powers and duties:**

41   **(1)  To receive input from the chief of police, in order to formulate and approve**
42   **policies governing the operation and conduct of the permanent police force pursuant to**
43   **section 84.100;**

44     **(2) To appoint as a chief of police any person who shall be responsible to the**
45 **board for proper execution of the policies, duties, and responsibilities established by the**
46 **board for the administration of the police department, including making**
47 **recommendations to the board on employment and discipline of the commissioned**
48 **and civilian employees of the police force, and to remove the chief of police pursuant to**
49 **section 106.273;**

50     **(3) To hear and determine appeals from the decisions of the chief of police on**
51 **disciplinary matters arising in the department, pursuant to section 590.502; however, at**
52 **the time of the effective date of this act and until such time as the board adopts other**
53 **investigative and disciplinary policies and procedures not inconsistent with section**
54 **590.502, discipline and investigative procedures for commissioned and civilian**
55 **employees of the police force shall be regulated by rule 7 of the police manual of the**
56 **police department in effect as of November 4, 2013; except that, where rule 7 is in**
57 **conflict with section 590.502, the board shall comply with the requirements of section**
58 **590.502.  Under no circumstances shall the board initially or hereafter adopt**
59 **investigative and disciplinary procedures that do not include the summary hearing**
60 **board procedures provided for in rule 7 of the police manual of the police department in**
61 **effect as of November 4, 2013;**

62     **(4) To promulgate a manual of rules and regulations for the qualifications and**
63 **conduct of personnel of the police department and its operation;**

64     **(5) To have such other powers and duties with respect to police administration**
65 **and law enforcement as provided by statute;**

66     **(6) To regulate and license all private watchmen, private detectives, and private**
67 **security serving or acting in the city and no person shall act as such without first having**
68 **obtained such license.  Penalties for the violation of regulations promulgated by the**
69 **board under this subsection shall be prescribed by ordinance.**

    84.030.  **1.** Beginning on [~~January 9, 1989, the governor of the state of Missouri, by~~
2 ~~and with the advice and consent of the senate, shall appoint~~] **the effective date of this act**
3 **and no later than ninety days after the effective date of this act,** the four **inaugural citizen**
4 commissioners **shall be appointed by the governor as** provided [~~for~~] in [~~section 84.020,~~
5 ~~and~~] **subsection 2 of section 84.020 and shall serve as follows:**

6     **(1)** One **citizen** commissioner shall [~~be appointed~~] **serve** for a term of one year;

7     **(2)** One **citizen** commissioner shall [~~be appointed~~] **serve** for a term of two years;

8     **(3)** One **citizen** commissioner shall [~~be appointed~~] **serve** for a term of three years;
9 **and**

10     **(4)** One **citizen** commissioner shall [~~be appointed~~] **serve** for a term of four years.

11

12  **The nonvoting commissioner shall be appointed by the governor as provided in**
13  **subsection 2 of section 84.020 and shall serve for a term of four years.**  Their successors
14  shall each be appointed for a term of four years, and said commissioners shall hold office for
15  their term of appointment and until their successors shall have been appointed and qualified.
16  [In case of a vacancy in said board for any cause whatsoever, it shall be filled by appointment
17  for the unexpired term, in the same manner as in the case of original appointments.  The
18  governor shall issue commissions to the persons so appointed, designating the time for which
19  they are appointed in case the appointment is to fill an unexpired term occasioned by death,
20  resignation or any other cause, and whenever the term of office of any commissioner expires,
21  the appointment of his successor shall be for four years.  The commissioners now holding
22  offices under existing laws in any city of this state to which sections 84.010 to 84.340 apply
23  are to hold their offices until the expiration of their terms, and their successors are duly
24  appointed and qualified]

25      **2.  Whenever a vacancy occurs on the commission for a citizen commissioner or**
26  **nonvoting commissioner, the governor may fill the vacancy for the unexpired term as**
27  **provided in subsection 2 of section 84.020**.

        84.100.  To enable the boards to perform the duties  imposed  upon  them,  they  are
2  hereby authorized and required to appoint, enroll and employ [a] **only one** permanent police
3  force for the cities which they shall equip and arm as they may judge necessary.  [Except as
4  provided below,] The number of patrolmen to be appointed shall [not be more than one
5  thousand six hundred eighty three of which number not more than two hundred fifty are to be
6  probationary patrolmen.  Any increase in the number of patrolmen authorized, in addition to
7  that provided for above, shall be permitted upon recommendation] **be determined** by the
8  board of police commissioners[, with the approval of the municipal board of estimate and
9  apportionment.  The number of turnkeys to be appointed shall be sixty-five, except that for
10  each patrolman hereafter promoted, demoted, removed, resigned or otherwise separated from
11  the force, an additional turnkey may be appointed, but under no circumstances shall more
12  than one hundred fifty turnkeys be appointed.  As each additional turnkey is appointed, the
13  maximum number of patrolmen to be appointed shall be reduced accordingly so that when
14  one hundred fifty turnkeys have been appointed, the number of patrolmen to be appointed
15  shall not be more than one thousand five hundred ninety-eight].  **The board may continue to**
16  **employ as many noncommissioned police civilians, which shall include city marshals**
17  **and park rangers, as it deems necessary in order to perform the duties imposed upon it.**

        84.150.  The **total number of** officers **and the number of officers at each rank** of
2  the police force in each such city shall be [as follows:  one chief of police with the rank of
3  colonel; lieutenant colonels, not to exceed five in number and other such ranks and number of
4  members within such ranks as the board from time to time deems necessary] **determined by**

5   **the board of police commissioners**.  The officers of the police force shall have commissions
6   issued to them by the boards of police commissioners, and those heretofore and those
7   hereafter commissioned shall serve so long as they shall faithfully perform their duties and
8   possess the necessary mental and physical ability, and be subject to removal only for cause
9   after a hearing by the board, who are hereby invested with exclusive jurisdiction in the
10  premises.

    84.160.  1.  As of **[**August 28, 2006**] the effective date of this act**, the board of police
2   commissioners shall have the authority to compute and establish the annual salary of each
3   member of the police force without receiving prior authorization from the general assembly**,**
4   **which shall not be less than the annual salary paid to any member at the time of the**
5   **effective date of this act**.

    6   2.    Each officer of police and patrolman whose regular assignment requires
7   nonuniformed attire may receive, in addition to his or her salary, an allowance not to exceed
8   three hundred sixty dollars per annum payable biweekly.  Notwithstanding the provisions of
9   subsection 1 of this section to the contrary, no additional compensation or compensatory time
10  off for overtime, court time, or standby court time shall be paid or allowed to any officer of
11  the rank of **[**sergeant**] lieutenant** or above.  Notwithstanding any other provision of law to the
12  contrary, nothing in this section shall prohibit the payment of additional compensation
13  pursuant to this subsection to officers of the ranks of sergeants and above, provided that
14  funding for such compensation shall not:

    15  (1)   Be paid from the general funds of either the city or the board of police
16  commissioners of the city; or

    17  (2)  Be violative of any federal law or other state law.

    18  3.  It is the duty of the municipal assembly or common council of the cities to make
19  the necessary appropriation for the expenses of the maintenance of the police force **governed**
20  **by the board of police commissioners,** in the manner **[**herein and hereafter**]** provided **in**
21  **section 84.210**;**[** provided, that in no event shall such municipal assembly or common council
22  be required to appropriate for such purposes (including, but not limited to, costs of funding
23  pensions or retirement plans) for any fiscal year a sum in excess of any limitation imposed by**]**
24  **except, pursuant to subsection 2 of section 21 of** article X**[**, section 21,**] of the** Missouri
25  Constitution**[**; and provided further, that**],** such municipal assembly or common council **[**may**]**
26  **shall** appropriate a **minimum** sum **[**in excess of such limitation for any fiscal year by an
27  appropriations ordinance enacted in conformity with the provisions of the charter of such
28  cities**] equal to the following percentages of the city's general revenue:**

    29  **(1)  Twenty-two percent for the period ending December 31, 2025;**

    30  **(2)   Twenty-three percent for the period beginning on January 1, 2026, and**
31  **ending on December 31, 2026;**

32    **(3)  Twenty-four percent for the period beginning on January 1, 2027, and ending**
33    **on December 31, 2027; and**

34    **(4)  Twenty-five percent beginning on January 1, 2028, and for all subsequent**
35    **years;**

36

37    **to fund the police force governed by the board of police commissioners.  Any pension**
38    **and retirement costs shall be excluded from the calculation of expenses for the**
39    **maintenance of the police force for the purposes of the minimum funding requirements**
40    **provided in this subsection**.

41    4.  Notwithstanding the provisions of subsection 1 of this section to the contrary, the
42    board of police commissioners shall pay additional compensation for all hours of service
43    rendered by probationary patrolmen [and]**,** patrolmen**, and sergeants** in excess of the
44    established regular working period, and the rate of compensation shall be one and one-half
45    times the regular hourly rate of pay to which each member shall normally be entitled; except
46    that, the court time and court standby time shall be paid at the regular hourly rate of pay to
47    which each member shall normally be entitled.  No credit shall be given or deductions made
48    from payments for overtime for the purpose of retirement benefits.

49    5.  Notwithstanding the provisions of subsection 1 of this section to the contrary,
50    probationary patrolmen [and]**,** patrolmen**, and sergeants** shall receive additional
51    compensation for authorized overtime, court time and court standby time whenever the
52    total accumulated time exceeds forty hours.  The accumulated forty hours shall be taken as
53    compensatory time off at the officer's discretion with the approval of his supervisor.

54    6.  The allowance of compensation or compensatory time off for court standby time
55    shall be computed at the rate of one-third of one hour for each hour spent on court standby
56    time.

57    7.  The board of police commissioners [may] **shall** effect programs to provide
58    additional compensation to its employees for successful completion of academic work at an
59    accredited college or university, in amounts not to exceed ten percent of their yearly salaries
60    or for field training officer and lead officer responsibilities in amounts not to exceed three
61    percent of their yearly salaries for field training officer responsibilities and an additional three
62    percent of their yearly salaries for lead officer responsibilities.  The board may designate up
63    to one hundred fifty employees as field training officers and up to fifty employees as lead
64    officers.

65    8.  The board of police commissioners:

66    (1)  Shall provide or contract for life insurance coverage and for insurance benefits
67    providing health, medical and disability coverage for officers and employees of the
68    department;

69     (2)  Shall provide or contract for insurance coverage providing salary continuation
70  coverage for officers and employees of the police department;

71     (3)  Shall provide health, medical, and life insurance coverage for retired officers and
72  employees of the police department.  Health, medical and life insurance coverage shall be
73  made available for purchase to the spouses or dependents of deceased retired officers and
74  employees of the police department who receive pension benefits pursuant to sections 86.200
75  to 86.364 at the rate that such dependent's or spouse's coverage would cost under the
76  appropriate plan if the deceased were living;

77     (4)  May pay an additional shift differential compensation to members of the police
78  force for evening and night tour of duty in an amount not to exceed ten percent of the officer's
79  base hourly rate.

80     9.  Notwithstanding the provisions of subsection 1 of this section to the contrary, the
81  board of police commissioners shall pay additional compensation to members of the police
82  force up to and including the rank of police officer for any full hour worked between the
83  hours of 11:00 p.m. and 7:00 a.m., in amounts equal to **[five] ten** percent of the officer's base
84  hourly pay.

85     10.  The board of police commissioners, from time to time and in its discretion, may
86  pay additional compensation to police officers, sergeants and lieutenants by paying
87  commissioned officers in the aforesaid ranks for accumulated, unused vacation time.  Any
88  such payments shall be made in increments of not less than forty hours, and at rates
89  equivalent to the base straight-time rates being earned by said officers at the time of payment;
90  except that, no such officer shall be required to accept payment for accumulated unused
91  vacation time.

     84.170.  1.  When any vacancy shall take place in any grade of officers, it shall be
2  filled from the next lowest grade; provided, however, that probationary patrolmen shall serve
3  at least six months as such before being promoted to the rank of patrolman; patrolmen shall
4  serve at least three years as such before being promoted to the rank of sergeant; sergeants
5  shall serve at least one year as such before being promoted to the rank of lieutenant;
6  lieutenants shall serve at least one year as such before being promoted to the rank of captain;
7  and in no case shall the chief or assistant chief be selected from men not members of the force
8  or below the grade of captain.  Patrolmen shall serve at least three years as such before
9  promotion to the rank of detective; the inspector shall be taken from men in the rank not
10  below the grade of lieutenant.

11     2.  The boards of police are hereby authorized to make all such rules and regulations,
12  not inconsistent with sections 84.010 to 84.340, or other laws of the state, as they may judge
13  necessary, for the appointment, employment, uniforming, discipline, trial and government of
14  the police.  **At the time of the effective date of this act and until such time as the board**

15  **adopts other investigative and disciplinary policies and procedures not inconsistent with**
16  **section 590.502, discipline and investigative procedures for commissioned and civilian**
17  **employees of the police force shall be regulated by rule 7 of the police manual of the**
18  **police department in effect as of November 4, 2013; except that, where rule 7 is in**
19  **conflict with section 590.502, the board shall comply with the requirements of section**
20  **590.502.    Under no circumstances shall the board initially or hereafter adopt**
21  **investigative and disciplinary procedures that do not include the summary hearing**
22  **board procedures provided for in rule 7 of the police manual of the police department in**
23  **effect as of November 4, 2013.**  The said boards shall also have power to require of any
24  officer or policeman bond with sureties when they may consider it demanded by the public
25  interests.  All lawful rules and regulations of the board shall be obeyed by the police force on
26  pain of dismissal or such lighter punishment, either by suspension, fine, reduction or
27  forfeiture of pay, or otherwise as the boards may adjudge.

28          3.  The authority possessed by the board of police includes, but is not limited to, the
29  authority to delegate portions of its powers authorized in section 84.120, including presiding
30  over a disciplinary hearing, to a hearing officer as determined by the board.

        **84.225.  Any officer or servant of the mayor or common council or municipal**
2  **assembly of the cities, or other persons whatsoever, who forcibly resists or obstructs the**
3  **execution or enforcement of any of the provisions of sections 84.012 to 84.340 or relating**
4  **to the same, or who disburses or fails to disburse any money in violation thereof, or who**
5  **hinders or obstructs the organization or maintenance of the board of police**
6  **commissioners or the police force therein provided to be organized and maintained,**
7  **or who maintains or controls any police force other than the one therein provided for, or**
8  **who delays or hinders the due enforcement of sections 84.012 to 84.340 by failing or**
9  **neglecting to perform the duties by such sections imposed upon him or her, shall be**
10  **subject to a penalty of one thousand dollars for each offense, recoverable by the board**
11  **by action at law in the name of the state, and shall forever thereafter be disqualified**
12  **from holding or exercising any office or employment whatsoever under the mayor or**
13  **common council or municipal assembly of such cities, or under sections 84.012 to**
14  **84.340; provided that, nothing in this section shall be construed to interfere with the**
15  **punishment, under any existing or any future laws of this state, of any criminal offense**
16  **that is committed by the parties in or about the resistance, obstruction, hindrance,**
17  **conspiracy, combination, or disbursement aforesaid.**

        **84.325.  1.  A transition director shall be appointed by the governor to ensure**
2  **oversight of an orderly transition of the control of any municipal police force from any**
3  **city not within a county to the board of police commissioners.  The implementation**
4  **period shall begin on the effective date of this act, and end no later than July 1, 2026.**

5  **The board of police commissioners shall assume control of any municipal police force**
6  **established within any city not within a county during the implementation period,**
7  **according to the procedures and requirements of this section and any rules promulgated**
8  **under subsection 6 of this section and as determined in coordination with the transition**
9  **director, local officials, and the board of police commissioners.  The purpose of these**
10  **procedures and requirements is to ensure the continuity of operations of the municipal**
11  **police force with minimized disruptions to the residents of any city not within a county,**
12  **to provide for an orderly and appropriate transition in the governance of the police**
13  **force, and to provide for an equitable employment transition for commissioned and**
14  **civilian personnel.**
15     **2.  Upon the assumption of control by the board of police commissioners under**
16  **subsection 1 of this section, any municipal police department within any city not within**
17  **a county shall convey, assign, and otherwise transfer to the board title and ownership of**
18  **all indebtedness and assets, including, but not limited to, all funds and real and personal**
19  **property held in the name of or controlled by the municipal police department.  Such**
20  **city shall thereafter cease the operation of any police department or police force.**
21     **3.  Upon the assumption of control by the board of police commissioners under**
22  **subsection 1 of this section, the state shall accept responsibility, ownership, and liability**
23  **as successor-in-interest for contractual obligations and other lawful obligations of the**
24  **municipal police department.**
25     **4.  The board of police commissioners shall initially employ, without a reduction**
26  **in rank, salary, or benefits, all commissioned and civilian personnel of the municipal**
27  **police department who were employed by the municipal police department immediately**
28  **prior to the date the board assumed control.  The board shall recognize all accrued**
29  **years of service that such commissioned and civilian personnel had with the municipal**
30  **police department, as well as all accrued years of service that such commissioned and**
31  **civilian personnel had previously with the board of police commissioners.  Such**
32  **personnel shall be entitled to the same holidays, vacation, sick leave, sick bonus time,**
33  **and annual step-increases they were entitled to as employees of the municipal police**
34  **department.**
35     **5.  The commissioned and civilian personnel who retire from service with the**
36  **municipal police department before the board of police commissioners assumed control**
37  **of the department under subsection 1 of this section shall continue to be entitled to the**
38  **same pension benefits provided as employees of the municipal police department and**
39  **the same benefits set forth in subsection 4 of this section.  Any police pension system**
40  **created under chapter 86 for the benefit of a police force established under sections**
41  **84.012 to 84.340 shall continue to be governed by chapter 86 and shall apply to any**

42 **comprehensive policing plan and any police force established under sections 84.012 to**
43 **84.340.  Other than any provision that makes chapter 86 applicable to a municipal**
44 **police force established under sections 84.343 to 84.346, nothing in sections 84.012 to**
45 **84.340 shall be construed as limiting or changing the rights or benefits provided under**
46 **chapter 86.**

47         **6.  The board of police commissioners may promulgate all necessary rules and**
48 **regulations for the implementation and administration of this section.  Any rule or**
49 **portion of a rule, as that term is defined in section 536.010, that is created under the**
50 **authority delegated in this section shall become effective only if it complies with and is**
51 **subject to all of the provisions of chapter 536 and, if applicable, section 536.028.  This**
52 **section and chapter 536 are nonseverable and if any of the powers vested with the**
53 **general assembly pursuant to chapter 536 to review, to delay the effective date, or to**
54 **disapprove and annul a rule are subsequently held unconstitutional, then the grant of**
55 **rulemaking authority and any rule proposed or adopted after the effective date of this**
56 **section shall be invalid and void.**

        105.726.  1.  Nothing in sections 105.711 to 105.726 shall be construed to broaden the
2 liability of the state of Missouri beyond the provisions of sections 537.600 to 537.610, nor to
3 abolish or waive any defense at law which might otherwise be available to any agency,
4 officer, or employee of the state of Missouri.  Sections 105.711 to 105.726 do not waive the
5 sovereign immunity of the state of Missouri.

6         2.  The creation of the state legal expense fund and the payment therefrom of such
7 amounts as may be necessary for the benefit of any person covered thereby are deemed
8 necessary and proper public purposes for which funds of this state may be expended.

9         3.  Moneys in the state legal expense fund shall not be available for the payment of
10 any claim or any amount required by any final judgment rendered by a court of competent
11 jurisdiction against a board of police commissioners established under chapter 84, including
12 the commissioners, any police officer, notwithstanding sections 84.330 and 84.710, or other
13 provisions of law, other employees, agents, representative, or any other individual or entity
14 acting or purporting to act on its or their behalf.  Such was the intent of the general assembly
15 in the original enactment of sections 105.711 to 105.726, and it is made express by this
16 section in light of the decision in Wayman Smith, III, et al. v. State of Missouri, 152 S.W.3d
17 275.  Except that the commissioner of administration shall reimburse from the legal expense
18 fund the [**board**] **boards** of police commissioners established under [section 84.350, and any
19 successor-in-interest established pursuant to section 84.344,] **chapter 84** for liability claims
20 otherwise eligible for payment under section 105.711 paid by such [board] **boards on an**
21 **equal share basis per claim** up to a maximum of [one] **two** million dollars per fiscal year.

22      4.  **[**Subject to the provisions of subsection 2 of section 84.345,**]** If the representation
23  of the attorney general is requested by a board of police commissioners **[**or its successor-in-
24  interest established pursuant to section 84.344**]**, the attorney general shall represent,
25  investigate, defend, negotiate, or compromise all claims under sections 105.711 to 105.726
26  for the board of police commissioners, **[**its successor-in-interest pursuant to section 84.344,**]**
27  any police officer, other employees, agents, representatives, or any other individual or entity
28  acting or purporting to act on their behalf.  The attorney general may establish procedures by
29  rules promulgated under chapter 536 under which claims must be referred for the attorney
30  general's representation.  The attorney general and the officials of the city which the police
31  board represents **[**or represented**]** shall meet and negotiate reasonable expenses or charges that
32  will fairly compensate the attorney general and the office of administration for the cost of the
33  representation of the claims under this section.

34      5.  Claims tendered to the attorney general promptly after the claim was asserted as
35  required by section 105.716 and prior to August 28, 2005, may be investigated, defended,
36  negotiated, or compromised by the attorney general and full payments may be made from the
37  state legal expense fund on behalf of the entities and individuals described in this section as a
38  result of the holding in Wayman Smith, III, et al. v. State of Missouri, 152 S.W.3d 275.

**191.1005.  1.  No individual or entity shall knowingly open, lease, rent, own, use,**
2  **maintain, manage, operate, or control a public or private facility, site, or building for the**
3  **purpose, in part or in whole, of allowing individuals to self-administer preobtained**
4  **controlled substances, the possession of which by the individual is punishable under**
5  **section 579.015 and is not otherwise authorized by chapters 195 and 579.**

6      **2.  This section shall not apply to any health care facility licensed pursuant to**
7  **chapter 197 or 198 that:**

8      **(a)  Provides medical assistance or monitoring to individuals who have self-**
9  **administered controlled substances;**

10      **(b)  Provides sterile injection supplies;**

11      **(c)  Collects used hypodermic needles and syringes; or**

12      **(d)  Provides secure hypodermic needle and syringe disposal services.**

13      **3.  This section shall not affect the immunity from liability provided by section**
14  **195.205 for any individual who, in good faith, seeks or obtains medical assistance for**
15  **someone who is experiencing an overdose of a controlled substance or for any individual**
16  **experiencing an overdose of a controlled substance who seeks medical assistance for**
17  **himself or herself or is the subject of a good faith request for medical assistance for an**
18  **overdose of a controlled substance.**

19      **4.  As used in this section, the term "controlled substance" means a drug,**
20  **substance, or immediate precursor in Schedules I through V listed in chapter 195.**

**217.451.  No correctional center or other party shall charge an offender in a correctional center a total amount for a domestic phone call, including fees and any per-minute rate, that exceeds the equivalent of twelve cents per minute.**

**221.108.  1.  Jails shall provide inmates with reasonable access to phone services during an inmate's term of confinement, except phone access may be restricted as a disciplinary measure.**

**2.  No jail or other party shall charge an inmate in a jail a total amount for a domestic phone call, including fees and any per-minute rate, that exceeds the equivalent of twelve cents per minute.**

**221.520.  1.  As used in this section, the following terms mean:**

**(1)  "Extraordinary circumstance", a substantial flight risk or some other extraordinary medical or security circumstance that dictates restraints be used to ensure the safety and security of a pregnant offender in her third trimester or a postpartum offender within forty-eight hours postdelivery, the staff of the county or city jail or medical facility, other offenders, or the public;**

**(2)  "Labor", the period of time before a birth during which contractions are present;**

**(3)  "Postpartum", the period of recovery immediately following childbirth, which is six weeks for a vaginal birth or eight weeks for a cesarean birth, or longer if so determined by a physician or nurse;**

**(4)  "Restraints", any device used to control the movement of a person's body or limbs.**

**2.  Except in extraordinary circumstances, a county or city jail shall not use restraints on a pregnant offender in her third trimester, whether during transportation to and from visits to health care providers and court proceedings, during medical appointments and examinations, or during labor, delivery, or forty-eight hours postdelivery.**

**3.  Pregnant offenders shall be transported in vehicles equipped with seatbelts.**

**4.  In the event a sheriff or jailer determines that extraordinary circumstances exist and restraints are necessary, the sheriff or jailer shall fully document in writing within forty-eight hours of the incident the reasons he or she determined such extraordinary circumstances existed, the type of restraints used, and the reasons those restraints were considered reasonable under the circumstances.  Such documents shall be kept on file by the county or city jail for at least five years from the date the restraints were used.**

**5.  Any time restraints are used on a pregnant offender in her third trimester or on a postpartum offender within forty-eight hours postdelivery, the restraints shall be**

29 **reasonable under the circumstances. Except in extraordinary circumstances, no leg,**
30 **ankle, or waist restraints or any mechanical restraints shall be used on any such**
31 **offender, and, if wrist restraints are used, such restraints shall be placed in the front of**
32 **such offender's body to protect the offender and the unborn child in the case of a**
33 **forward fall.**

34 **6. The county or city jail shall:**

35 **(1) Ensure that employees of the jail are provided with training, which may**
36 **include online training, on the provisions of this section; and**

37 **(2) Inform female offenders, in writing and orally, of any policies and practices**
38 **developed in accordance with this section upon admission to the jail, and post the**
39 **policies and practices in locations in the jail where such notices are commonly posted**
40 **and will be seen by female offenders.**

**221.523. 1. By January 1, 2026, all county and city jails shall develop specific**
2 **procedures for the intake and care of offenders who are pregnant, which shall include**
3 **procedures regarding:**

4 **(1) Maternal health evaluations;**

5 **(2) Dietary supplements, including prenatal vitamins;**

6 **(3) Timely and regular nutritious meals, consistent with the Nutrition During**
7 **Pregnancy Guidelines prepared by the American College of Obstetricians and**
8 **Gynecologists;**

9 **(4) Substance abuse treatment;**

10 **(5) Treatment for the human immunodeficiency virus and ways to avoid human**
11 **immunodeficiency virus transmission;**

12 **(6) Hepatitis C;**

13 **(7) Sleeping arrangements for such pregnant offenders in the third trimester,**
14 **including requiring such offenders to sleep on the bottom bunk bed;**

15 **(8) Access to mental health professionals;**

16 **(9) Sanitary materials; and**

17 **(10) Postpartum recovery, including that, except in extraordinary**
18 **circumstances, no such offender shall be placed in isolation during such recovery.**

19 **2. As used in this section, the term "postpartum recovery" means, as determined**
20 **by a physician, the period immediately following delivery, including the entire period an**
21 **offender who was pregnant is in the hospital or infirmary after delivery.**

304.012. 1. Every person operating a motor vehicle on the roads and highways of this
2 state shall drive the vehicle in a careful and prudent manner and at a rate of speed so as not to
3 endanger the property of another or the life or limb of any person and shall exercise the
4 highest degree of care.

5    **2.**  **No person operating a motor vehicle on the roads and highways of this state**
6    **shall perform stunt driving, as such term is defined in section 304.145.**

7    **3.**  Any person who violates the provisions of this section is guilty of a class B
8    misdemeanor, unless an accident is involved then it shall be a class A misdemeanor.

**304.145.  1.  As used in this section, the following terms mean:**

2    **(1)  "Aggravated offender", a person who has been found guilty of:**

3    **(a)  Three or more violations of this section committed on separate occasions; or**

4    **(b)  Two or more violations of this section committed on separate occasions where**
5    **at least one of the violations the defendant was operating a vehicle and another person**
6    **was injured or killed;**

7    **(2)  "Burnout", a maneuver performed while operating a motor vehicle whereby**
8    **the wheels of the motor vehicle are spun, resulting in friction causing the motor vehicle's**
9    **tires to heat up and emit smoke;**

10    **(3)  "Chronic offender", a person who has been found guilty of:**

11    **(a)  Four or more violations of this section committed on separate occasions; or**

12    **(b)  Three or more violations of this section committed on separate occasions**
13    **where at least one of the violations the defendant was operating a vehicle and another**
14    **person was injured or killed; or**

15    **(c)  Two or more violations of this section committed on separate occasions where**
16    **both of the violations the defendant was operating a vehicle and another person was**
17    **injured or killed;**

18    **(4)  "Donut", a motor vehicle maneuver in which the front or rear of the motor**
19    **vehicle is rotated around the opposite set of wheels in a motion that may cause a curved**
20    **skid-mark pattern of rubber on the driving surface, or the tires to heat up and emit**
21    **smoke, or both;**

22    **(5)  "Drag race", the operation of two or more motor vehicles from a point side**
23    **by side in a competitive attempt to outgain or outdistance each other, or the operation of**
24    **one or more motor vehicles over a common selected course, for the purpose of**
25    **comparing the relative speeds, power, or acceleration of such motor vehicles within a**
26    **certain distance or time limit;**

27    **(6)  "Drifting", a motor vehicle maneuver in which the motor vehicle is steered so**
28    **that it makes a controlled skid sideways through a turn with the front wheels oriented in**
29    **a direction opposite the turn;**

30    **(7)  "Habitual offender", a person who has been found guilty of:**

31    **(a)  Five or more violations of this section committed on separate occasions;**

32    **(b)   Four or more violations of this section committed on separate occasions**
33    **where at least one of the violations the defendant was operating a vehicle and another**
34    **person was injured or killed; or**

35    **(c)   Three or more violations of this section committed on separate occasions**
36    **where at least two of the violations the defendant was operating a vehicle and another**
37    **person was injured or killed;**

38    **(8)   "Highway", any public thoroughfare for vehicles, including state roads,**
39    **county roads and public streets, avenues, boulevards, parkways, or alleys in any**
40    **municipality;**

41    **(9)   "Persistent offender", a person who has been found guilty of:**

42    **(a)   Two or more violations of this section committed on separate occasions; or**

43    **(b)   One violation of this section where the defendant was operating a vehicle and**
44    **another person was injured or killed;**

45    **(10)   "Prior offender", a person who has been found guilty of a violation of this**
46    **section where such prior offense occurred within five years of the violation for which the**
47    **person is charged;**

48    **(11)   "Race", the operation of one or more motor vehicles arising from a**
49    **challenge to demonstrate superiority of a motor vehicle or driver, and the acceptance of**
50    **or competitive response to that challenge, either through a prior arrangement or in**
51    **immediate response, in which the competitor attempts to outgain or outdistance another**
52    **motor vehicle, to prevent another motor vehicle from passing, to arrive at a given**
53    **destination ahead of another motor vehicle, to test the physical stamina or endurance of**
54    **drivers, to exhibit speed or acceleration, or to set a speed or acceleration record;**

55    **(12)   "Street takeover", the act of disrupting the regular flow of traffic for the**
56    **purpose of performing, facilitating, or spectating stunt driving;**

57    **(13)   "Stunt driving", to operate a motor vehicle performing a race, a drag race,**
58    **a burnout, a donut, a wheelie, or drifting;**

59    **(14)   "Wheelie", a motor vehicle maneuver whereby a vehicle is ridden for a**
60    **distance with the front or rear wheel or wheels raised off the ground.**

61    **2.   Except as otherwise permitted by law, no person shall:**

62    **(1)   Perform stunt driving in connection with a street takeover; or**

63    **(2)   Perform or participate in a street takeover.**

64    **3.   Violation of this section shall be a class B misdemeanor for a first offense, a**
65    **class A misdemeanor for a second offense, and a class E felony for a third or subsequent**
66    **offense.**

67     **4. No defendant alleged and proven to be a prior offender, persistent offender,**
68 **aggravated offender, chronic offender, or habitual offender shall be granted a suspended**
69 **imposition of sentence or be sentenced to pay a fine in lieu of imprisonment.**

70     **5. No defendant alleged and proven to be a prior offender shall be granted**
71 **probation or parole until he or she has served a minimum of ten days of imprisonment,**
72 **unless as a condition of such probation or parole the person performs at least thirty days**
73 **of community service under the supervision of the court in a jurisdiction that has a**
74 **recognized program for community service.**

75     **6. No defendant alleged and proven to be an aggravated offender shall be eligible**
76 **for probation or parole until he or she has served a minimum of thirty days of**
77 **imprisonment.**

78     **7. No defendant alleged and proven to be a chronic or habitual offender shall be**
79 **eligible for probation or parole until he or she has served a minimum of one year of**
80 **imprisonment.**

81     **8. Prior pleas of guilty and prior findings of guilty shall be pleaded and proven**
82 **in the same manner as required by section 558.021.**

83     **9. This section shall not apply to events sanctioned by a political subdivision or**
84 **private entity with responsibility for maintenance and control of the portion of highway**
85 **or private property on which the motor vehicle operation occurs.**

    455.095. 1. For purposes of this section, the following terms mean:

2     (1) "Electronic monitoring with victim notification", an electronic monitoring system
3 that has the capability to track and monitor the movement of a person and immediately
4 transmit the monitored person's location to the protected person and the local law
5 enforcement agency with jurisdiction over the protected premises through an appropriate
6 means, including the telephone, an electronic beeper, or paging device whenever the
7 monitored person enters the protected premises as specified in the order by the court;

8     (2) "Informed consent", the protected person is given the following information
9 before consenting to participate in electronic monitoring with victim notification:

10     (a) The protected person's right to refuse to participate in such monitoring and the
11 process for requesting the court to terminate his or her participation after it has been ordered;

12     (b) The manner in which the electronic monitoring technology functions and the risks
13 and limitations of that technology;

14     (c) The boundaries imposed on the person being monitored during the electronic
15 monitoring;

16     (d) The sanctions that the court may impose for violations of the order issued by the
17 court;

18      (e)   The procedure that the protected person is to follow if the monitored person
19  violates an order or if the electronic monitoring equipment fails;

20      (f)   Identification of support services available to assist the protected person in
21  developing a safety plan to use if the monitored person violates an order or if the electronic
22  monitoring equipment fails;

23      (g)   Identification of community services available to assist the protected person in
24  obtaining shelter, counseling, education, child care, legal representation, and other help in
25  addressing the consequences and effects of domestic violence; and

26      (h)   The nonconfidential nature of the protected person's communications with the
27  court concerning electronic monitoring and the restrictions to be imposed upon the monitored
28  person's movements.

29      2.  When a person is found guilty of violating the terms and conditions of an ex parte
30  or full order of protection under section 455.085 or 455.538, the court may, in addition to or
31  in lieu of any other disposition:

32      (1)  Sentence the person to electronic monitoring with victim notification; or

33      (2)   Place the person on probation and, as a condition of such probation, order
34  electronic monitoring with victim notification.

35      3.  When a person charged with violating the terms and conditions of an ex parte or
36  full order of protection under section 455.085 or 455.538 is released from custody before trial
37  pursuant to section 544.455, the court may, as a condition of release, order electronic
38  monitoring of the person with victim notification.

39      4.  Electronic monitoring with victim notification shall be ordered only with the
40  protected person's informed consent.  In determining whether to place a person on electronic
41  monitoring with victim notification, the court may hold a hearing to consider the likelihood
42  that the person's participation in electronic monitoring will deter the person from injuring the
43  protected person.  The court shall consider the following factors:

44      (1)  The gravity and seriousness of harm that the person inflicted on the protected
45  person in the commission of any act of domestic violence;

46      (2)  The person's previous history of domestic violence;

47      (3)  The person's history of other criminal acts, if any;

48      (4)  Whether the person has access to a weapon;

49      (5)  Whether the person has threatened suicide or homicide;

50      (6)  Whether the person has a history of mental illness or has been civilly committed;
51  and

52      (7)  Whether the person has a history of alcohol or substance abuse.

53      5.  Unless the person is determined to be indigent by the court, a person ordered to be
54  placed on electronic monitoring with victim notification shall be ordered to pay the related

55  costs and expenses.  If the court determines the person is indigent, the person may be placed
56  on electronic monitoring with victim notification, and the clerk of the court in which the case
57  was determined shall notify the department of corrections that the person was determined to
58  be indigent and shall include in a bill to the department the costs associated with the
59  monitoring.  The department shall establish by rule a procedure to determine the portion of
60  costs each indigent person is able to pay based on a person's income, number of dependents,
61  and other factors as determined by the department and shall seek reimbursement of such
62  costs.

63       6.  An alert from an electronic monitoring device shall be probable cause to arrest the
64  monitored person for a violation of an ex parte or full order of protection.

65       7.  The department of corrections, department of public safety, Missouri state highway
66  patrol, the circuit courts, and county and municipal law enforcement agencies shall share
67  information obtained via electronic monitoring conducted pursuant to this section.

68       8.  No supplier of a product, system, or service used for electronic monitoring with
69  victim notification shall be liable, directly or indirectly, for damages arising from any injury
70  or death associated with the use of the product, system, or service unless, and only to the
71  extent that, such action is based on a claim that the injury or death was proximately caused by
72  a manufacturing defect in the product or system.

73       9.  Nothing in this section shall be construed as limiting a court's ability to place a
74  person on electronic monitoring without victim notification under section 544.455 or
75  557.011.

76       10.  A person shall be found guilty of the offense of tampering with electronic
77  monitoring equipment under section 575.205 if he or she commits the actions prohibited
78  under such section with any equipment that a court orders the person to wear under this
79  section.

80       11.  The department of corrections shall promulgate rules and regulations for the
81  implementation of subsection 5 of this section.  Any rule or portion of a rule, as that term is
82  defined in section 536.010, that is created under the authority delegated in this section shall
83  become effective only if it complies with and is subject to all of the provisions of chapter 536
84  and, if applicable, section 536.028.  This section and chapter 536 are nonseverable and if any
85  of the powers vested with the general assembly pursuant to chapter 536 to review, to delay the
86  effective date, or to disapprove and annul a rule are subsequently held unconstitutional, then
87  the grant of rulemaking authority and any rule proposed or adopted after August 28, 2018,
88  shall be invalid and void.

89      ~~[12.  The provisions of this section shall expire on August 28, 2024.]~~

      **491.065.  1.  As used in this section, unless the context otherwise requires, the**
2  **following terms mean:**

3    **(1)  "Benefit", any plea bargain, bail consideration, reduction or modification of**
4    **sentence, or any other leniency, immunity, financial payment, reward, or amelioration**
5    **of current or future conditions of incarceration that has been requested or that has been**
6    **or may, at a future date, be offered or provided in connection with or in exchange for the**
7    **testimony of an informant who was endorsed by the state;**

8    **(2)  "Informant", a witness who provides testimony that offers allegedly self-**
9    **incriminating statements or activities of another person who is under investigation or**
10   **being charged with an offense, and the witness:**

11   **(a)  Is or was incarcerated with the suspect or defendant;**

12   **(b)  Is being detained by or in the custody of law enforcement; or**

13   **(c)  Provides testimony in exchange for any benefit.**

14

15   **The term "informant" shall not refer to or include a codefendant or victim involved in**
16   **the case.**

17   **2.   Beginning January 1, 2026, and thereafter, each prosecuting or circuit**
18   **attorney shall send the information described under subdivision (4) of subsection 2 of**
19   **section 56.750 to the Missouri office of prosecution services to be included in the**
20   **summary report as defined in subsection 2 of section 56.750.**

21   **3.   If a prosecuting or circuit attorney endorses a witness to testify as an**
22   **informant, the following material and information shall be disclosed to all attorneys of**
23   **record within fourteen days of the endorsement by the prosecuting or circuit attorney:**

24   **(1)  The complete criminal history of the informant, including any charges that**
25   **are pending or were reduced, amended, or dismissed as part of a plea bargain;**

26   **(2)  The informant cooperation agreement and a copy of any deal, promise,**
27   **inducement, or benefit that has been requested or that has been or may, at a future date,**
28   **be offered or provided to the informant in connection with testimony against the**
29   **defendant's interest;**

30   **(3)  The substance, time, and place of any statement allegedly given by the**
31   **defendant to the informant, and the substance, time, and place of any statement given**
32   **by the informant to a law enforcement agency implicating the defendant in the offense**
33   **charged;**

34   **(4)  Whether the informant recanted that testimony or statement and, if so, the**
35   **time and place of the recantation, the nature of the recantation, and the names of the**
36   **persons who were present at the recantation; and**

37   **(5)  Information concerning other criminal cases in any county in which the**
38   **informant was endorsed by the state to testify against a defendant, including the**
39   **following:**

40      **(a)   The case name and number;**

41      **(b)   The substance of the testimony;**

42      **(c)   Any cooperation agreement, deal, promise, inducement, or benefit that was**

43  **requested, offered, or provided to the informant in connection with the informant's**

44  **testimony; and**

45      **(d)    Any other information that is requested to be disclosed under the**

46  **Constitution of the United States, the Constitution of Missouri, and the Missouri**

47  **supreme court rules of criminal procedure.**

1          513.605.  As used in sections 513.600 to 513.645, unless the context clearly indicates

2   otherwise, the following terms mean:

3       (1)  (a)  "Beneficial interest":

4       a.  The interest of a person as a beneficiary under any other trust arrangement pursuant

5   to which a trustee holds legal or record title to real property for the benefit of such person; or

6       b.   The interest of a person under any other form of express fiduciary arrangement

7   pursuant to which any other person holds legal or record title to real property for the benefit

8   of such person;

9       (b)  "Beneficial interest" does not include the interest of a stockholder in a corporation

10  or the interest of a partner in either a general partnership or limited partnership.  A beneficial

11  interest shall be deemed to be located where the real property owned by the trustee is located;

12      (2)   "Civil proceeding", any civil suit commenced by an investigative agency under

13  any provision of sections 513.600 to 513.645;

14      (3)   "Criminal activity" is the commission, attempted commission, conspiracy to

15  commit, or the solicitation, coercion or intimidation of another person to commit any crime

16  which is chargeable by indictment or information under the following Missouri laws:

17      (a)  Chapter 195, relating to drug regulations;

18      **(b)   Chapter 301, relating to registration and licensing of motor vehicles;**

19      **(c)   Chapter 304, but relating only to felony violations of this chapter involving**

20  **the use of a motor vehicle;**

21      **(d)   Chapter 311, but relating only to felony violations of this chapter committed**

22  **by persons not duly licensed by the supervisor of liquor control;**

23      **(e)   Chapter 409, relating to regulation of securities;**

24      **(f)   Chapter 491, relating to witnesses;**

25      **(g)**  Chapter 565, relating to offenses against the person;

26      [(e)] **(h)**  Chapter 566, relating to sexual offenses;

27      [(d)] **(i)   Chapter 567, relating to prostitution;**

28      **(j)**  Chapter 568, relating to offenses against the family;

29      [(e)] **(k)**   Chapter 569, relating to robbery, arson, burglary and related offenses;

30    [(f)] **(l)**  Chapter 570, relating to stealing and related offenses;

31    [(g)  Chapter 567, relating to prostitution;

32    (h)] **(m)  Chapter 571, relating to weapons offenses;**

33    **(n)  Chapter 572, relating to gambling;**

34    **(o)**  Chapter 573, relating to pornography and related offenses;

35    [(i)] **(p)**  Chapter 574, relating to offenses against public order;

36    [(j)] **(q)**  Chapter 575, relating to offenses against the administration of justice;

37    [(k)  Chapter 491, relating to witnesses;

38    (l)  Chapter 572, relating to gambling;

39    (m)  Chapter 311, but relating only to felony violations of this chapter committed by

40    persons not duly licensed by the supervisor of liquor control;

41    (n)  Chapter 571, relating to weapons offenses;

42    (o)  Chapter 409, relating to regulation of securities;

43    (p)  Chapter 301, relating to registration and licensing of motor vehicles]

44    **(r)  Chapter 578, but only relating to offenses by a criminal street gang**;

45    (4)  "Criminal proceeding", any criminal prosecution commenced by an investigative

46    agency under any criminal law of this state;

47    (5)  "Investigative agency", the attorney general's office, or the office of any

48    prosecuting attorney or circuit attorney;

49    (6)  "Pecuniary value":

50    (a)  Anything of value in the form of money, a negotiable instrument, a commercial

51    interest, or anything else the primary significance of which is economic advantage; or

52    (b)  Any other property or service that has a value in excess of one hundred dollars;

53    (7)  "Real property", any estate or legal or equitable interest in land situated in this

54    state or any interest in such real property, including, but not limited to, any lease or deed of

55    trust upon such real property;

56    (8)  "Seizing agency", the agency which is the primary employer of the officer or

57    agent seizing the property, including any agency in which one or more of the employees

58    acting on behalf of the seizing agency is employed by the state of Missouri or any political

59    subdivision of this state;

60    (9)  "Seizure", the point at which any law enforcement officer or agent discovers and

61    exercises any control over property that an officer or agent has reason to believe was used or

62    intended for use in the course of, derived from, or realized through criminal activity.  Seizure

63    includes but is not limited to preventing anyone found in possession of the property from

64    leaving the scene of the investigation while in possession of the property;

65    (10)  (a)  "Trustee":

66      a.  Any person who holds legal or record title to real property for which any other
67 person has a beneficial interest; or

68      b.  Any successor trustee or trustees to any of the foregoing persons;

69      (b)  "Trustee" does not include the following:

70      a.  Any person appointed or acting as a personal representative under chapter 475 or
71 under chapter 473;

72      b.  Any person appointed or acting as a trustee of any testamentary trust or as trustee
73 of any indenture of trust under which any bonds are or are to be issued.

        556.061.  In this code, unless the context requires a different definition, the following
2 terms shall mean:

3      (1)  "Access", to instruct, communicate with, store data in, retrieve or extract data
4 from, or otherwise make any use of any resources of, a computer, computer system, or
5 computer network;

6      (2)  "Affirmative defense":

7      (a)  The defense referred to is not submitted to the trier of fact unless supported by
8 evidence; and

9      (b)  If the defense is submitted to the trier of fact the defendant has the burden of
10 persuasion that the defense is more probably true than not;

11      (3)  "Burden of injecting the issue":

12      (a)  The issue referred to is not submitted to the trier of fact unless supported by
13 evidence; and

14      (b)  If the issue is submitted to the trier of fact any reasonable doubt on the issue
15 requires a finding for the defendant on that issue;

16      (4)  "Commercial film and photographic print processor", any person who develops
17 exposed photographic film into negatives, slides or prints, or who makes prints from
18 negatives or slides, for compensation.  The term commercial film and photographic print
19 processor shall include all employees of such persons but shall not include a person who
20 develops film or makes prints for a public agency;

21      (5)  "Computer", the box that houses the central processing unit (CPU), along with
22 any internal storage devices, such as internal hard drives, and internal communication
23 devices, such as internal modems capable of sending or receiving electronic mail or fax cards,
24 along with any other hardware stored or housed internally.  Thus, computer refers to
25 hardware, software and data contained in the main unit.  Printers, external modems attached
26 by cable to the main unit, monitors, and other external attachments will be referred to
27 collectively as peripherals and discussed individually when appropriate.  When the computer
28 and all peripherals are referred to as a package, the term "computer system" is used.

29 Information refers to all the information on a computer system including both software
30 applications and data;

31     (6) "Computer equipment", computers, terminals, data storage devices, and all other
32 computer hardware associated with a computer system or network;

33     (7) "Computer hardware", all equipment which can collect, analyze, create, display,
34 convert, store, conceal or transmit electronic, magnetic, optical or similar computer impulses
35 or data. Hardware includes, but is not limited to, any data processing devices, such as central
36 processing units, memory typewriters and self-contained laptop or notebook computers;
37 internal and peripheral storage devices, transistor-like binary devices and other memory
38 storage devices, such as floppy disks, removable disks, compact disks, digital video disks,
39 magnetic tape, hard drive, optical disks and digital memory; local area networks, such as two
40 or more computers connected together to a central computer server via cable or modem;
41 peripheral input or output devices, such as keyboards, printers, scanners, plotters, video
42 display monitors and optical readers; and related communication devices, such as modems,
43 cables and connections, recording equipment, RAM or ROM units, acoustic couplers,
44 automatic dialers, speed dialers, programmable telephone dialing or signaling devices and
45 electronic tone-generating devices; as well as any devices, mechanisms or parts that can be
46 used to restrict access to computer hardware, such as physical keys and locks;

47     (8) "Computer network", two or more interconnected computers or computer
48 systems;

49     (9) "Computer program", a set of instructions, statements, or related data that directs
50 or is intended to direct a computer to perform certain functions;

51     (10) "Computer software", digital information which can be interpreted by a
52 computer and any of its related components to direct the way they work. Software is stored in
53 electronic, magnetic, optical or other digital form. The term commonly includes programs to
54 run operating systems and applications, such as word processing, graphic, or spreadsheet
55 programs, utilities, compilers, interpreters and communications programs;

56     (11) "Computer-related documentation", written, recorded, printed or electronically
57 stored material which explains or illustrates how to configure or use computer hardware,
58 software or other related items;

59     (12) "Computer system", a set of related, connected or unconnected, computer
60 equipment, data, or software;

61     (13) "Confinement":

62     (a) A person is in confinement when such person is held in a place of confinement
63 pursuant to arrest or order of a court, and remains in confinement until:

64     a. A court orders the person's release; or

65     b. The person is released on bail, bond, or recognizance, personal or otherwise; or

66      c.  A public servant having the legal power and duty to confine the person authorizes
67  his release without guard and without condition that he return to confinement;

68      (b)  A person is not in confinement if:

69      a.  The person is on probation or parole, temporary or otherwise; or

70      b.   The person is under sentence to serve a term of confinement which is not
71  continuous, or is serving a sentence under a work-release program, and in either such case is
72  not being held in a place of confinement or is not being held under guard by a person having
73  the legal power and duty to transport the person to or from a place of confinement;

74      (14)  "Consent":  consent or lack of consent may be expressed or implied.  Assent
75  does not constitute consent if:

76      (a)  It is given by a person who lacks the mental capacity to authorize the conduct
77  charged to constitute the offense and such mental incapacity is manifest or known to the
78  actor; or

79      (b)   It is given by a person who by reason of youth, mental disease or defect,
80  intoxication, a drug-induced state, or any other reason is manifestly unable or known by the
81  actor to be unable to make a reasonable judgment as to the nature or harmfulness of the
82  conduct charged to constitute the offense; or

83      (c)  It is induced by force, duress or deception;

84      (15)  "Controlled substance", a drug, substance, or immediate precursor in schedules I
85  through V as defined in chapter 195;

86      (16)  "Criminal negligence", failure to be aware of a substantial and unjustifiable risk
87  that circumstances exist or a result will follow, and such failure constitutes a gross deviation
88  from the standard of care which a reasonable person would exercise in the situation;

89      (17)  "Custody", a person is in custody when he or she has been arrested but has not
90  been delivered to a place of confinement;

91      (18)  "Damage", when used in relation to a computer system or network, means any
92  alteration, deletion, or destruction of any part of the computer system or network;

93      (19)  "Dangerous felony", the felonies of arson in the first degree, assault in the first
94  degree, attempted rape in the first degree if physical injury results, attempted forcible rape if
95  physical injury results, attempted sodomy in the first degree if physical injury results,
96  attempted forcible sodomy if physical injury results, rape in the first degree, forcible rape,
97  sodomy in the first degree, forcible sodomy, assault in the second degree if the victim of such
98  assault is a special victim as defined in subdivision (14) of section 565.002, kidnapping in the
99  first degree, kidnapping, murder in the second degree, assault of a law enforcement officer in
100  the first degree, domestic assault in the first degree, elder abuse in the first degree, robbery in
101  the first degree, armed criminal action, conspiracy to commit an offense when the offense is a
102  dangerous felony, vehicle hijacking when punished as a class A felony, statutory rape in the

103  first degree when the victim is a child less than twelve years of age at the time of the
104  commission of the act giving rise to the offense, statutory sodomy in the first degree when the
105  victim is a child less than twelve years of age at the time of the commission of the act giving
106  rise to the offense, child molestation in the first or second degree, abuse of a child if the child
107  dies as a result of injuries sustained from conduct chargeable under section 568.060, child
108  kidnapping, parental kidnapping committed by detaining or concealing the whereabouts of
109  the child for not less than one hundred ninety days under section 565.153, **bus hijacking**
110  **when punished as a class A felony, planting a bomb or explosive in or near a bus or**
111  **terminal,** and an "intoxication-related traffic offense" or "intoxication-related boating
112  offense" if the person is found to be a "habitual offender" or "habitual boating offender" as
113  such terms are defined in section 577.001;

114       (20)  "Dangerous instrument", any instrument, article or substance, which, under the
115  circumstances in which it is used, is readily capable of causing death or other serious physical
116  injury;

117       (21)  "Data", a representation of information, facts, knowledge, concepts, or
118  instructions prepared in a formalized or other manner and intended for use in a computer or
119  computer network.  Data may be in any form including, but not limited to, printouts,
120  microfiche, magnetic storage media, punched cards and as may be stored in the memory of a
121  computer;

122       (22)  "Deadly weapon", any firearm, loaded or unloaded, or any weapon from which a
123  shot, readily capable of producing death or serious physical injury, may be discharged, or a
124  switchblade knife, dagger, billy club, blackjack or metal knuckles;

125       (23)  "Digital camera", a camera that records images in a format which enables the
126  images to be downloaded into a computer;

127       (24)  "Disability", a mental, physical, or developmental impairment that substantially
128  limits one or more major life activities or the ability to provide adequately for one's care or
129  protection, whether the impairment is congenital or acquired by accident, injury or disease,
130  where such impairment is verified by medical findings;

131       (25)  "Elderly person", a person sixty years of age or older;

132       (26)  "Felony", an offense so designated or an offense for which persons found guilty
133  thereof may be sentenced to death or imprisonment for a term of more than one year;

134       (27)  "Forcible compulsion" either:

135       (a)  Physical force that overcomes reasonable resistance; or

136       (b)  A threat, express or implied, that places a person in reasonable fear of death,
137  serious physical injury or kidnapping of such person or another person;

138  (28)  "Incapacitated", a temporary or permanent physical or mental condition in which
139  a person is unconscious, unable to appraise the nature of his or her conduct, or unable to
140  communicate unwillingness to an act;

141  (29)  "Infraction", a violation defined by this code or by any other statute of this state
142  if it is so designated or if no sentence other than a fine, or fine and forfeiture or other civil
143  penalty, is authorized upon conviction;

144  (30)  "Inhabitable structure", a vehicle, vessel or structure:

145  (a)  Where any person lives or carries on business or other calling; or

146  (b)  Where people assemble for purposes of business, government, education, religion,
147  entertainment, or public transportation; or

148  (c)  Which is used for overnight accommodation of persons.

149

150  Any such vehicle, vessel, or structure is inhabitable regardless of whether a person is actually
151  present.  If a building or structure is divided into separately occupied units, any unit not
152  occupied by the actor is an inhabitable structure of another;

153  (31)  "Knowingly", when used with respect to:

154  (a)  Conduct or attendant circumstances, means a person is aware of the nature of his
155  or her conduct or that those circumstances exist; or

156  (b)  A result of conduct, means a person is aware that his or her conduct is practically
157  certain to cause that result;

158  (32)  "Law enforcement officer", any public servant having both the power and duty to
159  make arrests for violations of the laws of this state, and federal law enforcement officers
160  authorized to carry firearms and to make arrests for violations of the laws of the United
161  States;

162  (33)  "Misdemeanor", an offense so designated or an offense for which persons found
163  guilty thereof may be sentenced to imprisonment for a term of which the maximum is one
164  year or less;

165  (34)  "Of another", property that any entity, including but not limited to any natural
166  person, corporation, limited liability company, partnership, association, governmental
167  subdivision or instrumentality, other than the actor, has a possessory or proprietary interest
168  therein, except that property shall not be deemed property of another who has only a security
169  interest therein, even if legal title is in the creditor pursuant to a conditional sales contract or
170  other security arrangement;

171  (35)  "Offense", any felony or misdemeanor;

172  (36)  "Physical injury", slight impairment of any function of the body or temporary
173  loss of use of any part of the body;

174    (37)  "Place of confinement", any building or facility and the grounds thereof wherein
175  a court is legally authorized to order that a person charged with or convicted of a crime be
176  held;

177    (38)  "Possess" or "possessed", having actual or constructive possession of an object
178  with knowledge of its presence.  A person has actual possession if such person has the object
179  on his or her person or within easy reach and convenient control.  A person has constructive
180  possession if such person has the power and the intention at a given time to exercise dominion
181  or control over the object either directly or through another person or persons.  Possession
182  may also be sole or joint.  If one person alone has possession of an object, possession is sole.
183  If two or more persons share possession of an object, possession is joint;

184    (39)  "Property", anything of value, whether real or personal, tangible or intangible, in
185  possession or in action;

186    (40)  "Public servant", any person employed in any way by a government of this state
187  who is compensated by the government by reason of such person's employment, any person
188  appointed to a position with any government of this state, or any person elected to a position
189  with any government of this state.  It includes, but is not limited to, legislators, jurors,
190  members of the judiciary and law enforcement officers.  It does not include witnesses;

191    (41)  "Purposely", when used with respect to a person's conduct or to a result thereof,
192  means when it is his or her conscious object to engage in that conduct or to cause that result;

193    (42)  "Recklessly", consciously disregarding a substantial and unjustifiable risk that
194  circumstances exist or that a result will follow, and such disregard constitutes a gross
195  deviation from the standard of care which a reasonable person would exercise in the situation;

196    (43)  "Serious emotional injury", an injury that creates a substantial risk of temporary
197  or permanent medical or psychological damage, manifested by impairment of a behavioral,
198  cognitive or physical condition.  Serious emotional injury shall be established by testimony of
199  qualified experts upon the reasonable expectation of probable harm to a reasonable degree of
200  medical or psychological certainty;

201    (44)  "Serious physical injury", physical injury that creates a substantial risk of death
202  or that causes serious disfigurement or protracted loss or impairment of the function of any
203  part of the body;

204    (45)  "Services", when used in relation to a computer system or network, means use of
205  a computer, computer system, or computer network and includes, but is not limited to,
206  computer time, data processing, and storage or retrieval functions;

207    (46)  "Sexual orientation", male or female heterosexuality, homosexuality or
208  bisexuality by inclination, practice, identity or expression, or having a self-image or
209  identity not traditionally associated with one's gender;

210    (47)  "Vehicle", a self-propelled mechanical device designed to carry a person or
211  persons, excluding vessels or aircraft;

212    (48)  "Vessel", any boat or craft propelled by a motor or by machinery, whether or not
213  such motor or machinery is a principal source of propulsion used or capable of being used as
214  a means of transportation on water, or any boat or craft more than twelve feet in length which
215  is powered by sail alone or by a combination of sail and machinery, and used or capable of
216  being used as a means of transportation on water, but not any boat or craft having, as the only
217  means of propulsion, a paddle or oars;

218    (49)  "Voluntary act":

219    (a)  A bodily movement performed while conscious as a result of effort or
220  determination.  Possession is a voluntary act if the possessor knowingly procures or receives
221  the thing possessed, or having acquired control of it was aware of his or her control for a
222  sufficient time to have enabled him or her to dispose of it or terminate his or her control; or

223    (b)  An omission to perform an act of which the actor is physically capable.  A person
224  is not guilty of an offense based solely upon an omission to perform an act unless the law
225  defining the offense expressly so provides, or a duty to perform the omitted act is otherwise
226  imposed by law;

227    (50)  "Vulnerable person", any person in the custody, care, or control of the
228  department of mental health who is receiving services from an operated, funded, licensed, or
229  certified program.

    566.210.  1.  A person commits the offense of sexual trafficking of a child in the first
2  degree if he or she knowingly:

3    (1)  Recruits, entices, harbors, transports, provides, or obtains by any means, including
4  but not limited to through the use of force, abduction, coercion, fraud, deception, blackmail,
5  or causing or threatening to cause financial harm, a person under the age of [twelve] **fourteen**
6  to participate in a commercial sex act, a sexual performance, or the production of explicit
7  sexual material as defined in section 573.010, or benefits, financially or by receiving anything
8  of value, from participation in such activities;

9    (2)  Causes a person under the age of [twelve] **fourteen** to engage in a commercial sex
10  act, a sexual performance, or the production of explicit sexual material as defined in section
11  573.010; or

12    (3)  Advertises the availability of a person under the age of [twelve] **fourteen** to
13  participate in a commercial sex act, a sexual performance, or the production of explicit sexual
14  material as defined in section 573.010.

15    2.  It shall not be a defense that the defendant believed that the person was [twelve]
16  **fourteen** years of age or older.

17    3.  The offense of sexual trafficking of a child in the first degree is a felony for which
18  the authorized term of imprisonment is life imprisonment without eligibility for probation or
19  parole until the offender has served not less than [twenty-five] **thirty** years of such sentence.
20  Subsection 4 of section 558.019 shall not apply to the sentence of a person who has been
21  found guilty of sexual trafficking of a child less than [twelve] **fourteen** years of age, and "life
22  imprisonment" shall mean imprisonment for the duration of a person's natural life for the
23  purposes of this section.

1        566.211.  1.  A person commits the offense of sexual trafficking of a child in the
2   second degree if he or she knowingly:

3        (1)  Recruits, entices, harbors, transports, provides, or obtains by any means, including
4   but not limited to through the use of force, abduction, coercion, fraud, deception, blackmail,
5   or causing or threatening to cause financial harm, a person under the age of eighteen to
6   participate in a commercial sex act, a sexual performance, or the production of explicit sexual
7   material as defined in section 573.010, or benefits, financially or by receiving anything of
8   value, from participation in such activities;

9        (2)  Causes a person under the age of eighteen to engage in a commercial sex act, a
10  sexual performance, or the production of explicit sexual material as defined in section
11  573.010; or

12       (3)  Advertises the availability of a person under the age of eighteen to participate in a
13  commercial sex act, a sexual performance, or the production of explicit sexual material as
14  defined in section 573.010.

15       2.  It shall not be a defense that the defendant believed that the person was eighteen
16  years of age or older.

17       3.  The offense **of** sexual trafficking of a child in the second degree is a felony
18  punishable by imprisonment for a term of years not less than [ten] **twenty** years or life and a
19  fine not to exceed two hundred fifty thousand dollars if the child is under the age of eighteen.
20  If a violation of this section was effected by force, abduction, or coercion, the crime of sexual
21  trafficking of a child shall be a felony for which the authorized term of imprisonment is life
22  imprisonment without eligibility for probation or parole until the defendant has served not
23  less than twenty-five years of such sentence.

1        568.045.  1.  A person commits the offense of endangering the welfare of a child in the
2   first degree if he or she:

3        (1)  Knowingly acts in a manner that creates a substantial risk to the life, body, or
4   health of a child less than seventeen years of age; [or]

5        (2)  Knowingly engages in sexual conduct with a person under the age of seventeen
6   years over whom the person is a parent, guardian, or otherwise charged with the care and
7   custody;

8   (3)  Knowingly encourages, aids or causes a child less than seventeen years of age to
9  engage in any conduct which violates the provisions of chapter 571 or 579; **or**

10   (4)  In the presence of a child less than seventeen years of age or in a residence where
11  a child less than seventeen years of age resides, unlawfully manufactures or attempts to
12  manufacture compounds, possesses, produces, prepares, sells, transports, tests or analyzes
13  **any of the following: fentanyl, carfentanil,** amphetamine**,** or methamphetamine**,** or any **[**of
14  its analogues**] analogue thereof**.

15   2.  The offense of endangering the welfare of a child in the first degree is a class D
16  felony unless the offense:

17   (1)  Is committed as part of an act or series of acts performed by two or more persons
18  as part of an established or prescribed pattern of activity, or where physical injury to the child
19  results, or the offense is a second or subsequent offense under this section, in which case the
20  offense is a class C felony;

21   (2)  **Involves fentanyl or carfentanil, or any analogue thereof, in which case:**

22   **(a)  The offense is a class B felony; and**

23   **(b)  A person sentenced under this subdivision shall not be eligible for conditional**
24  **release or parole until he or she has served at least five years of imprisonment;**

25   **(3)**  Results in serious physical injury to the child, in which case the offense is a class
26  B felony; **or**

27   **[**(3)**] (4)**  Results in the death of a child, in which case the offense is a class A felony.

   570.030.  1.  A person commits the offense of stealing if he or she:

2   (1)  Appropriates property or services of another with the purpose to deprive him or
3  her thereof, either without his or her consent or by means of deceit or coercion;

4   (2)  Attempts to appropriate anhydrous ammonia or liquid nitrogen of another with the
5  purpose to deprive him or her thereof, either without his or her consent or by means of deceit
6  or coercion; or

7   (3)  For the purpose of depriving the owner of a lawful interest therein, receives,
8  retains or disposes of property of another knowing that it has been stolen, or believing that it
9  has been stolen.

10   2.  The offense of stealing is a class A felony if the property appropriated consists of
11  any of the following containing any amount of anhydrous ammonia:  a tank truck, tank trailer,
12  rail tank car, bulk storage tank, field nurse, field tank or field applicator.

13   3.  The offense of stealing is a class B felony if:

14   (1)  The property appropriated or attempted to be appropriated consists of any amount
15  of anhydrous ammonia or liquid nitrogen;

16   (2)  The property consists of any animal considered livestock as the term livestock is
17  defined in section 144.010, or any captive wildlife held under permit issued by the

18  conservation commission, and the value of the animal or animals appropriated exceeds three
19  thousand dollars and that person has previously been found guilty of appropriating any animal
20  considered livestock or captive wildlife held under permit issued by the conservation
21  commission.  Notwithstanding any provision of law to the contrary, such person shall serve a
22  minimum prison term of not less than eighty percent of his or her sentence before he or she is
23  eligible for probation, parole, conditional release, or other early release by the department of
24  corrections;

25      (3)  A person appropriates property consisting of a motor vehicle, watercraft, or
26  aircraft, and that person has previously been found guilty of two stealing-related offenses
27  committed on two separate occasions where such offenses occurred within ten years of the
28  date of occurrence of the present offense;

29      (4)  The property appropriated or attempted to be appropriated consists of any animal
30  considered livestock as the term is defined in section 144.010 if the value of the livestock
31  exceeds ten thousand dollars; **[or]**

32      (5)  The property appropriated or attempted to be appropriated is owned by or in the
33  custody of a financial institution and the property is taken or attempted to be taken physically
34  from an individual person to deprive the owner or custodian of the property**; or**

35      **(6)  The person appropriates property, the person's course of conduct is part of**
36  **an organized retail theft, and the value of the property taken, combined with any**
37  **property damage inflicted in such theft, is ten thousand dollars or more**.

38      4.  The offense of stealing is a class C felony if**:**

39      **(1)**  The value of the property or services appropriated is twenty-five thousand dollars
40  or more **[or]**;

41      **(2)**  The property is a teller machine or the contents of a teller machine, including
42  cash, regardless of the value or amount**; or**

43      **(3)  The person appropriates property, the person's course of conduct is part of**
44  **an organized retail theft, and the value of the property taken, combined with any**
45  **property damage inflicted in such theft, is seven hundred fifty dollars or more but less**
46  **than ten thousand dollars**.

47      5.  The offense of stealing is a class D felony if:

48      (1)  The value of the property or services appropriated is seven hundred fifty dollars or
49  more;

50      (2)  The offender physically takes the property appropriated from the person of the
51  victim; or

52      (3)  The property appropriated consists of:

53      (a)  Any motor vehicle, watercraft or aircraft;

54      (b)  Any will or unrecorded deed affecting real property;

55      (c)  Any credit device, debit device or letter of credit;

56      (d)  Any firearms;

57      (e)  Any explosive weapon as defined in section 571.010;

58      (f)   Any United States national flag designed, intended and used for display on

59   buildings or stationary flagstaffs in the open;

60      (g)  Any original copy of an act, bill or resolution, introduced or acted upon by the

61   legislature of the state of Missouri;

62      (h)  Any pleading, notice, judgment or any other record or entry of any court of this

63   state, any other state or of the United States;

64      (i)  Any book of registration or list of voters required by chapter 115;

65      (j)  Any animal considered livestock as that term is defined in section 144.010;

66      (k)  Any live fish raised for commercial sale with a value of seventy-five dollars or

67   more;

68      (l)  Any captive wildlife held under permit issued by the conservation commission;

69      (m)  Any controlled substance as defined by section 195.010;

70      (n)  Ammonium nitrate;

71      (o)  Any wire, electrical transformer, or metallic wire associated with transmitting

72   telecommunications, video, internet, or voice over internet protocol service, or any other

73   device or pipe that is associated with conducting electricity or transporting natural gas or

74   other combustible fuels; or

75      (p)  Any material appropriated with the intent to use such material to manufacture,

76   compound, produce, prepare, test or analyze amphetamine or methamphetamine or any of

77   their analogues.

78      6.  The offense of stealing is a class E felony if:

79      (1)  The property appropriated is an animal;

80      (2)  The property is a catalytic converter;

81      (3)   A person has previously been found guilty of three stealing-related offenses

82   committed on three separate occasions where such offenses occurred within ten years of the

83   date of occurrence of the present offense; or

84      (4)  The property appropriated is a letter, postal card, package, bag, or other sealed

85   article that was delivered by a common carrier or delivery service and not yet received by the

86   addressee or that had been left to be collected for shipment by a common carrier or delivery

87   service.

88      7.  The offense of stealing is a class D misdemeanor if the property is not of a type

89   listed in subsection 2, 3, 5, or 6 of this section, the property appropriated has a value of less

90   than one hundred fifty dollars, and the person has no previous findings of guilt for a stealing-

91   related offense.

92      8.  The offense of stealing is a class A misdemeanor if no other penalty is specified in
93  this section.

94      9.  If a violation of this section is subject to enhanced punishment based on prior
95  findings of guilt, such findings of guilt shall be pleaded and proven in the same manner as
96  required by section 558.021.

97      10.  The appropriation of any property or services of a type listed in subsection 2, 3, 5,
98  or 6 of this section or of a value of seven hundred fifty dollars or more may be considered a
99  separate felony and may be charged in separate counts.

100      11.  The value of property or services appropriated pursuant to one scheme or course
101  of conduct, whether from the same or several owners and whether at the same or different
102  times, constitutes a single criminal episode and may be aggregated in determining the grade
103  of the offense, except as set forth in subsection 10 of this section.

104      **12.  As used in this section, the term "organized retail theft" means:**

105      **(1)  Any act of stealing committed by one or more persons, as part of any**
106  **agreement to steal property from any business, and separate acts of stealing that are**
107  **part of any ongoing agreement to steal may be aggregated for the purpose of**
108  **determining value regardless of whether such acts are committed in the same**
109  **jurisdiction or at the same time;**

110      **(2)  Any act of receiving or possessing any property that has been taken or stolen**
111  **in violation of subdivision (1) of this subsection while knowing or having reasonable**
112  **grounds to believe the property is stolen from any business in violation of this section,**
113  **and separate acts of receiving or possessing such stolen property that are part of any**
114  **ongoing agreement to receive or possess such stolen property may be aggregated for the**
115  **purpose of determining value regardless of whether such acts are committed in the same**
116  **jurisdiction or at the same time; or**

117      **(3)  Any act of organizing, supervising, financing, leading, or managing between**
118  **one or more persons to engage for profit in a scheme or course of conduct to effectuate**
119  **or intend to effectuate the transfer or sale of property stolen from any business in**
120  **violation of this section, and separate acts of organizing, supervising, financing, leading,**
121  **or managing between one or more persons to engage for profit in a scheme or course of**
122  **conduct to effectuate or intend to effectuate the transfer or sale of such stolen property**
123  **that are part of any ongoing agreement to organize, supervise, finance, lead, or manage**
124  **between one or more persons to engage for profit in a scheme or course of conduct to**
125  **effectuate or intend to effectuate the transfer or sale of such stolen property may be**
126  **aggregated for the purpose of determining the value regardless of whether such acts are**
127  **committed in the same jurisdiction or at the same time.**

128      **13.  If any prosecuting attorney or circuit attorney makes a request in writing to**
129  **the attorney general, the attorney general shall have the authority to commence and**
130  **prosecute the offense of stealing if such offense involves organized retail theft, and any**
131  **other offenses that directly arise from or causally occur as a result of an alleged violation**
132  **of the offense of stealing involving organized retail theft, in each or any county or a city**
133  **not within a county in which the offense occurred with the same power and authority**
134  **granted to prosecuting attorneys in section 56.060 and circuit attorneys in section**
135  **56.450, except that all costs and fees of such prosecution by the attorney general shall be**
136  **paid by the state and not by any county or local government.**

137      **14.  No provision of this section shall grant any additional power to the attorney**
138  **general beyond commencement and prosecution of offenses as authorized in this section.**

     575.133.  1.  A person commits the offense of filing a nonconsensual common law lien
2  if he or she files a document that purports to assert a lien against the assets, real or personal,
3  of any person and that, regardless of any self-description:

4      (1)  Is not expressly provided for by a specific state or federal statute;

5      (2)  Does not depend upon the consent of the owner of the property affected or the
6  existence of a contract for its existence; and

7      (3)  Is not an equitable or constructive lien imposed by a state or federal court of
8  competent jurisdiction.

9      2.  This section shall not apply to a filing officer as defined in section 428.105 that is
10  acting in the scope of his or her employment.

11      3.  The offense of filing a nonconsensual common law lien is a class B misdemeanor**,**
12  **unless it is a second offense, in which case it is a class A misdemeanor.  Any third or**
13  **subsequent offense of filing a nonconsensual common law lien is a class E felony.  Any**
14  **person convicted of a third or subsequent offense of filing a nonconsensual common law**
15  **lien shall be considered a persistent offender, as such term is defined in section 558.016**.

     575.150.  1.  A person commits the offense of resisting or interfering with arrest,
2  detention, or stop if he or she knows or reasonably should know that a law enforcement
3  officer is making an arrest or attempting to lawfully detain or stop an individual or vehicle,
4  and for the purpose of preventing the officer from effecting the arrest, stop or detention, he or
5  she:

6      (1)  Resists the arrest, stop or detention of such person by using or threatening the use
7  of violence or physical force or by fleeing from such officer; or

8      (2)  Interferes with the arrest, stop or detention of another person by using or
9  threatening the use of violence, physical force or physical interference.

10      2.  This section applies to:

11      (1)  Arrests, stops, or detentions, with or without warrants;

SS #2 SCS HCS #2 HB 495                      48

12      (2)  Arrests, stops, or detentions, for any offense, infraction, or ordinance violation;
13  and

14      (3)  Arrests for warrants issued by a court or a probation and parole officer.

15      3.  A person is presumed to be fleeing a vehicle stop if he or she continues to operate a
16  motor vehicle after he or she has seen or should have seen clearly visible emergency lights or
17  has heard or should have heard an audible signal emanating from the law enforcement vehicle
18  pursuing him or her.

19      4.  It is no defense to a prosecution pursuant to subsection 1 of this section that the law
20  enforcement officer was acting unlawfully in making the arrest.  However, nothing in this
21  section shall be construed to bar civil suits for unlawful arrest.

22      5.  The offense of resisting or interfering with an arrest is a class E felony for an arrest
23  for a:

24      (1)  Felony;

25      (2)  Warrant issued for failure to appear on a felony case; or

26      (3)  Warrant issued for a probation violation on a felony case.

27

28  The offense of resisting an arrest, detention or stop in violation of subdivision (1) or (2) of
29  subsection 1 of this section is a class A misdemeanor, unless the person fleeing creates a
30  substantial risk of serious physical injury or death to any person, in which case it is a class E
31  felony.

32      **6.  In the case of a conviction or a plea of guilty under this section that is subject**
33  **to punishment as a class E felony, any vehicle used in violation of this section may be**
34  **impounded and forfeited pursuant to section 82.1000 and sections 513.600 to 513.645.**

576.030.  1.  A person commits the offense of obstructing government operations if he
2  or she purposely obstructs, impairs, hinders or perverts the performance of a governmental
3  function by the use or threat of violence, force, or other physical interference or obstacle.

4      2.  The offense of obstructing government operations is a class B misdemeanor.  **The**
5  **offense of obstructing government operations is a class A misdemeanor if the person**
6  **uses violence or force.**

577.150.  1.  A person commits the offense of tampering with a water supply if he or
2  she purposely:

3      (1)  Poisons, defiles**,** or in any way corrupts the water of a well, spring, brook**,** or
4  reservoir used for domestic or municipal purposes; or

5      (2)  Diverts, dams up**,** and holds back from its natural course and flow any spring,
6  brook**,** or other water supply for domestic or municipal purposes, after said water supply shall
7  have once been taken for use by any person or persons, corporation, town**,** or city for their
8  use.

9      2.  The offense of tampering with a water supply is **a class E felony when the offense**
10  **is a violation of subdivision (1) of subsection 1 of this section and is** a class A
11  misdemeanor **when the offense is a violation of subdivision (2) of subsection 1 of this**
12  **section**.

590.040.  1.  The POST commission shall set the minimum number of hours of basic
2  training for licensure as a peace officer no lower than six hundred, with the following
3  exceptions:

4      (1)  Up to one thousand hours may be mandated for any class of license required for
5  commission by a state law enforcement agency;

6      (2)  As few as one hundred twenty hours may be mandated for any class of license
7  restricted to commission as a reserve peace officer with police powers limited to the
8  commissioning political subdivision;

9      (3)  Persons validly licensed on August 28, 2001, may retain licensure without
10  additional basic training;

11      (4)  Persons licensed and commissioned within a county of the third classification
12  before July 1, 2002, may retain licensure with one hundred twenty hours of basic training if
13  the commissioning political subdivision has adopted an order or ordinance to that effect;

14      (5)  Persons serving as a reserve officer on August 27, 2001, within a county of the
15  first classification or a county with a charter form of government and with more than one
16  million inhabitants on August 27, 2001, having previously completed a minimum of one
17  hundred sixty hours of training, shall be granted a license necessary to function as a reserve
18  peace officer only within such county.  For the purposes of this subdivision, the term "reserve
19  officer" shall mean any person who serves in a less than full-time law enforcement capacity,
20  with or without pay and who, without certification, has no power of arrest and who, without
21  certification, must be under the direct and immediate accompaniment of a certified peace
22  officer of the same agency at all times while on duty; and

23      (6)  The POST commission shall provide for the recognition of basic training received
24  at law enforcement training centers of other states, the military, the federal government and
25  territories of the United States regardless of the number of hours included in such training and
26  shall have authority to require supplemental training as a condition of eligibility for licensure.

27      2.  The director shall have the authority to limit any exception provided in subsection
28  1 of this section to persons remaining in the same commission or transferring to a commission
29  in a similar jurisdiction.

30      3.  The basic training of every peace officer, except agents of the conservation
31  commission, shall include at least thirty hours of training in the investigation and
32  management of cases involving domestic and family violence.  Such training shall include
33  instruction, specific to domestic and family violence cases, regarding:  report writing;

34  physical abuse, sexual abuse, child fatalities and child neglect; interviewing children and
35  alleged perpetrators; the nature, extent and causes of domestic and family violence; the safety
36  of victims, other family and household members and investigating officers; legal rights and
37  remedies available to victims, including rights to compensation and the enforcement of civil
38  and criminal remedies; services available to victims and their children; the effects of cultural,
39  racial and gender bias in law enforcement; and state statutes.  Said curriculum shall be
40  developed and presented in consultation with the department of health and senior services, the
41  children's division, public and private providers of programs for victims of domestic and
42  family violence, persons who have demonstrated expertise in training and education
43  concerning domestic and family violence, and the Missouri coalition against domestic
44  violence.

45      **4.  The basic training of every peace officer first licensed on or after August 28,**
46  **2027, shall include at least six hours of training concerning the prohibition against racial**
47  **profiling and such training shall promote understanding and respect for racial and**
48  **cultural differences and the use of effective, noncombative methods for carrying out law**
49  **enforcement duties in a racially and culturally diverse environment.  Such training shall**
50  **include two hours of racial profiling training, two hours of implicit bias training, and**
51  **two hours of de-escalation training.**

1       **590.208.  1.  There is hereby established the "Committee on School Safety"**
2  **within the department of public safety.**
3       **2.  The committee shall consist of the following members:**
4       **(1)  Up to three representatives of the department of public safety;**
5       **(2)  A representative of the Missouri Sheriff's Association;**
6       **(3)  A representative of the Missouri Municipal League;**
7       **(4)  A representative of the department of elementary and secondary education;**
8  **and**
9       **(5)  A representative of the Missouri School Boards' Association's Center for**
10  **Education Safety.**
11      **3.  One member who represents the department of public safety shall serve as**
12  **chair of the committee.**
13      **4.  Members of the committee shall serve without compensation but may be**
14  **reimbursed for actual expenses necessary to the performance of their official duties for**
15  **the committee.**
16      **5.  The committee shall meet at least four times per year, and at least once per**
17  **calendar quarter, to evaluate and establish guidelines for school safety concerns,**
18  **including plans to prevent school firearm violence.**

19      **6.  Except as provided in section 610.021, all meetings of the committee shall be**
20  **open to the public.**

21      **7.  The committee shall submit an annual report in writing to the governor,**
22  **president pro tempore of the senate, and speaker of the house of representatives.**

        595.209.   1.   The following rights shall automatically be afforded to victims of
2  dangerous felonies, as defined in section 556.061, victims of murder in the first degree, as
3  defined in section 565.020, victims of voluntary manslaughter, as defined in section 565.023,
4  victims of any offense under chapter 566, victims of an attempt to commit one of the
5  preceding crimes, as defined in section 562.012, and victims of domestic assault, as defined in
6  sections 565.072 to 565.076; and, upon written request, the following rights shall be afforded
7  to victims of all other crimes and witnesses of crimes:

8      (1)  For victims, the right to be present at all criminal justice proceedings at which the
9  defendant has such right, including juvenile proceedings where the offense would have been a
10  felony if committed by an adult, even if the victim is called to testify or may be called to
11  testify as a witness in the case;

12      (2)   For victims, the right to information about the crime, as provided for in
13  subdivision (5) of this subsection;

14      (3)  For victims and witnesses, to be informed, in a timely manner, by the prosecutor's
15  office of the filing of charges, preliminary hearing dates, trial dates, continuances and the
16  final disposition of the case.  Final disposition information shall be provided within five days;

17      (4)   For victims, the right to confer with and to be informed by the prosecutor
18  regarding bail hearings, guilty pleas, pleas under chapter 552 or its successors, hearings,
19  sentencing and probation revocation hearings and the right to be heard at such hearings,
20  including juvenile proceedings, unless in the determination of the court the interests of justice
21  require otherwise;

22      (5)  **For victims,** the right to be informed by local law enforcement agencies, the
23  appropriate juvenile authorities or the custodial authority of the following:

24      (a)  The status of any case concerning a crime against the victim, including juvenile
25  offenses;

26      (b)  The right to be informed by local law enforcement agencies or the appropriate
27  juvenile authorities of the availability of victim compensation assistance, assistance in
28  obtaining documentation of the victim's losses, including, but not limited to and subject to
29  existing law concerning protected information or closed records, access to copies of
30  complete, unaltered, unedited investigation reports of motor vehicle, pedestrian, and other
31  similar accidents upon request to the appropriate law enforcement agency by the victim or the
32  victim's representative, and emergency crisis intervention services available in the
33  community;

34     (c)  Any release of such person on bond or for any other reason;

35     (d)  Within twenty-four hours, any escape by such person from a municipal detention
36  facility, county jail, a correctional facility operated by the department of corrections, mental
37  health facility, or the division of youth services or any agency thereof, and any subsequent
38  recapture of such person; **and**

39     **(e)  The name of an informant who has been endorsed under section 491.065 as a**
40  **witness by a prosecuting or circuit attorney and any benefit that has been requested by**
41  **or has been offered to the informant and any benefit that may be provided at a future**
42  **date in connection with such endorsement;**

43     (6)   For victims, the right to be informed by appropriate juvenile authorities of
44  probation revocation hearings initiated by the juvenile authority and the right to be heard at
45  such hearings or to offer a written statement, video or audio tape, counsel or a representative
46  designated by the victim in lieu of a personal appearance, the right to be informed by the
47  board of probation and parole of probation revocation hearings initiated by the board and of
48  parole hearings, the right to be present at each and every phase of parole hearings, the right to
49  be heard at probation revocation and parole hearings or to offer a written statement, video or
50  audio tape, counsel or a representative designated by the victim in lieu of a personal
51  appearance, and the right to have, upon written request of the victim, a partition set up in the
52  probation or parole hearing room in such a way that the victim is shielded from the view of
53  the probationer or parolee, and the right to be informed by the custodial mental health facility
54  or agency thereof of any hearings for the release of a person committed pursuant to the
55  provisions of chapter 552, the right to be present at such hearings, the right to be heard at such
56  hearings or to offer a written statement, video or audio tape, counsel or a representative
57  designated by the victim in lieu of personal appearance;

58     (7)   For victims and witnesses, upon their written request, the right to be informed by
59  the appropriate custodial authority, including any municipal detention facility, juvenile
60  detention facility, county jail, correctional facility operated by the department of corrections,
61  mental health facility, division of youth services or agency thereof if the offense would have
62  been a felony if committed by an adult, postconviction or commitment pursuant to the
63  provisions of chapter 552 of the following:

64     (a)  The projected date of such person's release from confinement;

65     (b)  Any release of such person on bond;

66     (c)  Any release of such person on furlough, work release, trial release, electronic
67  monitoring program, or to a community correctional facility or program or release for any
68  other reason, in advance of such release;

69    (d)   Any scheduled parole or release hearings, including hearings under section
70    217.362, regarding such person and any changes in the scheduling of such hearings.  No such
71    hearing shall be conducted without thirty days' advance notice;

72    (e)  Within twenty-four hours, any escape by such person from a municipal detention
73    facility, county jail, a correctional facility operated by the department of corrections, mental
74    health facility, or the division of youth services or any agency thereof, and any subsequent
75    recapture of such person;

76    (f)  Any decision by a parole board, by a juvenile releasing authority or by a circuit
77    court presiding over releases pursuant to the provisions of chapter 552, or by a circuit court
78    presiding over releases under section 217.362, to release such person or any decision by the
79    governor to commute the sentence of such person or pardon such person; **and**

80    (g)   Notification within thirty days of the death of such person;

81    (8)   For witnesses who have been summoned by the prosecuting attorney and for
82    victims, to be notified by the prosecuting attorney in a timely manner when a court
83    proceeding will not go on as scheduled;

84    (9)  For victims and witnesses, the right to reasonable protection from the defendant or
85    any person acting on behalf of the defendant from harm and threats of harm arising out of
86    their cooperation with law enforcement and prosecution efforts;

87    (10)  For victims and witnesses, on charged cases or submitted cases where no charge
88    decision has yet been made, to be informed by the prosecuting attorney of the status of the
89    case and of the availability of victim compensation assistance and of financial assistance and
90    emergency and crisis intervention services available within the community and information
91    relative to applying for such assistance or services, and of any final decision by the
92    prosecuting attorney not to file charges;

93    (11)  For victims, to be informed by the prosecuting attorney of the right to restitution
94    which shall be enforceable in the same manner as any other cause of action as otherwise
95    provided by law;

96    (12)   For victims and witnesses, to be informed by the court and the prosecuting
97    attorney of procedures to be followed in order to apply for and receive any witness fee to
98    which they are entitled;

99    (13) When a victim's property is no longer needed for evidentiary reasons or needs to
100   be retained pending an appeal, the prosecuting attorney or any law enforcement agency
101   having possession of the property shall, upon request of the victim, return such property to the
102   victim within five working days unless the property is contraband or subject to forfeiture
103   proceedings, or provide written explanation of the reason why such property shall not be
104   returned;

105    (14)  An employer may not discharge or discipline any witness, victim or member of a
106    victim's immediate family for honoring a subpoena to testify in a criminal proceeding,
107    attending a criminal proceeding, or for participating in the preparation of a criminal
108    proceeding, or require any witness, victim, or member of a victim's immediate family to use
109    vacation time, personal time, or sick leave for honoring a subpoena to testify in a criminal
110    proceeding, attending a criminal proceeding, or participating in the preparation of a criminal
111    proceeding.  A public school district, public school, or charter school shall not discipline a
112    child for failure to comply with the district's or school's attendance policy, and the parent or
113    legal guardian shall not be deemed to be in violation of the provisions of section 167.061, and
114    the district or school shall not otherwise discipline a child, based on such child's honoring a
115    subpoena to testify in a criminal proceeding, attending a criminal proceeding, or for
116    participating in the preparation of a criminal proceeding;

117    (15)  For victims, to be provided with creditor intercession services by the prosecuting
118    attorney if the victim is unable, as a result of the crime, temporarily to meet financial
119    obligations;

120    (16)  For victims and witnesses, the right to speedy disposition of their cases, and for
121    victims, the right to speedy appellate review of their cases, provided that nothing in this
122    subdivision shall prevent the defendant from having sufficient time to prepare such
123    defendant's defense.  The attorney general shall provide victims, upon their written request,
124    case status information throughout the appellate process of their cases.  The provisions of this
125    subdivision shall apply only to proceedings involving the particular case to which the person
126    is a victim or witness;

127    (17)  For victims and witnesses, to be provided by the court, a secure waiting area
128    during court proceedings and to receive notification of the date, time and location of any
129    hearing conducted by the court for reconsideration of any sentence imposed, modification of
130    such sentence or recall and release of any defendant from incarceration; **and**

131    (18)  For victims, the right to receive upon request from the department of corrections
132    a photograph taken of the defendant prior to release from incarceration.

133    2.  The provisions of subsection 1 of this section shall not be construed to imply any
134    victim who is incarcerated by the department of corrections or any local law enforcement
135    agency has a right to be released to attend any hearing or that the department of corrections or
136    the local law enforcement agency has any duty to transport such incarcerated victim to any
137    hearing.

138    3.  Those persons entitled to notice of events pursuant to the provisions of subsection
139    1 of this section shall provide the appropriate person or agency with their current addresses,
140    electronic mail addresses, and telephone numbers or the addresses, electronic mail addresses,
141    or telephone numbers at which they wish notification to be given.

142  4.  Notification by the appropriate person or agency utilizing the statewide automated
143  crime victim notification system as established in section 650.310 shall constitute compliance
144  with the victim notification requirement of this section.  If notification utilizing the statewide
145  automated crime victim notification system cannot be used, then written notification shall be
146  sent by certified mail or electronic mail to the most current address or electronic mail address
147  provided by the victim.

148  5.  Victims' rights as established in Section 32 of Article I of the Missouri Constitution
149  or the laws of this state pertaining to the rights of victims of crime shall be granted and
150  enforced regardless of the desires of a defendant and no privileges of confidentiality shall
151  exist in favor of the defendant to exclude victims or prevent their full participation in each and
152  every phase of parole hearings or probation revocation hearings.  The rights of the victims
153  granted in this section are absolute and the policy of this state is that the victim's rights are
154  paramount to the defendant's rights.  The victim has an absolute right to be present at any
155  hearing in which the defendant is present before a probation and parole hearing officer.

1  **595.325.  1.  There is hereby created the "Missing and Murdered African**
2  **American Women and Girls Task Force" to consist of the following members:**

3  **(1)  The following four members of the general assembly:**

4  **(a)   Two members of the senate, with one member to be appointed by the**
5  **president pro tempore of the senate and one member to be appointed by the minority**
6  **floor leader of the senate; and**

7  **(b)   Two members of the house of representatives, with one member to be**
8  **appointed by the speaker of the house of representatives and one member to be**
9  **appointed by the minority floor leader of the house of representatives;**

10  **(2)  The director of the department of public safety or his or her designee;**

11  **(3)  Two representatives appointed by the director of the department of public**
12  **safety from among the following:**

13  **(a)  A member from the Missouri Police Chiefs Association;**

14  **(b)  A member from the Missouri Sheriffs Association; or**

15  **(c)  The superintendent of the Missouri highway patrol or his or her designee;**

16  **(4)  One or more representatives appointed by the director of public safety from**
17  **among the following:**

18  **(a)  The attorney general or his or her designee;**

19  **(b)  The director of the Missouri office of prosecution services;**

20  **(c)  The president of the Missouri prosecutors association;**

21  **(d)  A judge or attorney working in a juvenile court; or**

22  **(e)  An attorney working in the United States Attorney's Office;**

23  **(5)  A county coroner or a representative from a statewide coroner's association;**

24    **(6)   Three or more representatives appointed by the director of public safety**
25    **from among the following:**

26    **(a)   A statewide or local organization that provides legal services to African**
27    **American women and girls;**

28    **(b)   A statewide or local organization that provides advocacy or counseling for**
29    **African American women and girls who have been victims of violence;**

30    **(c)   A statewide or local organization that provides services to African American**
31    **women and girls; or**

32    **(d)   An African American woman who is a survivor of gender violence.**

33    **2.   The task force shall appoint a chairperson who is elected by a majority vote of**
34    **the members of the task force.   The task force shall have an initial meeting before**
35    **October 1, 2025.  The members of the task force shall serve without compensation, but**
36    **shall be entitled to necessary and actual expenses incurred in attending meetings of the**
37    **task force.**

38    **3.   The task force shall examine and report on the following:**

39    **(1)   The systemic causes behind violence that African American women and girls**
40    **experience, including patterns and underlying factors that explain why**
41    **disproportionately high levels of violence occur against African American women and**
42    **girls, including underlying historical, social, economic, institutional, and cultural factors**
43    **that may contribute to the violence;**

44    **(2)   Appropriate methods for tracking and collecting data on violence against**
45    **African American women and girls, including data on missing and murdered African**
46    **American women and girls;**

47    **(3)   Policies and institutions such as policing, child welfare, coroner practices,**
48    **and other governmental practices that impact violence against African American**
49    **women and girls and the investigation and prosecution of crimes of gender violence**
50    **against African American women and girls;**

51    **(4)   Measures necessary to address and reduce violence against African**
52    **American women and girls; and**

53    **(5)  Measures to help victims, victims' families, and victims' communities prevent**
54    **and heal from violence that occurs against African American women and girls.**

55    **4.   The department of public safety shall provide administrative support to the**
56    **task force.**

57    **5.  On or before December thirty-first of each year, the task force shall submit a**
58    **report on its findings to the governor and the general assembly.**

59    **6.   The task force shall expire on December 31, 2027, unless extended until**
60    **December 31, 2029, as determined necessary by the department of public safety.**

SS #2 SCS HCS #2 HB 495                    57

650.058.  1.  Notwithstanding the sovereign immunity of the state, any individual who
2  was found guilty of a felony in a Missouri court and was later determined to be actually
3  innocent of such crime **[**solely as a result of DNA profiling analysis**]** may be paid restitution.
4  The individual may receive an amount of one hundred **seventy-nine** dollars per day for each
5  day of postconviction incarceration for the crime for which the individual is determined to be
6  actually innocent.  The petition for the payment of said restitution shall be filed with the
7  sentencing court.  For the purposes of this section, the term "actually innocent" shall mean:
8       (1)  The individual was convicted of a felony for which a final order of release was
9  entered by the court;
10      (2)  All appeals of the order of release have been exhausted;
11      (3)  The individual was not serving any term of a sentence for any other crime
12  concurrently with the sentence for which he or she is determined to be actually innocent,
13  unless such individual was serving another concurrent sentence because his or her parole was
14  revoked by a court or the parole board in connection with the crime for which the person has
15  been exonerated.  Regardless of whether any other basis may exist for the revocation of the
16  person's probation or parole at the time of conviction for the crime for which the person is
17  later determined to be actually innocent, when the court's or the parole board's sole stated
18  reason for the revocation in its order is the conviction for the crime for which the person is
19  later determined to be actually innocent, such order shall, for purposes of this section only, be
20  conclusive evidence that **[**their**] the persons's** probation or parole was revoked in connection
21  with the crime for which the person has been exonerated; and
22      (4)  Testing ordered under section 547.035, or testing by the order of any state or
23  federal court, if such person was exonerated on or before August 28, 2004, or testing ordered
24  under section 650.055, if such person was or is exonerated after August 28, 2004, **or after an**
25  **evidentiary hearing and finding in a habeas corpus proceeding or a proceeding held**
26  **pursuant to section 547.031 which** demonstrates a person's innocence of the crime for which
27  the person is in custody.
28
29  Any individual who receives restitution under this section shall be prohibited from seeking
30  any civil redress from the state, its departments and agencies, or any employee thereof, or any
31  political subdivision or its employees.  This section shall not be construed as a waiver of
32  sovereign immunity for any purposes other than the restitution provided for herein.  The
33  department of corrections shall determine the aggregate amount of restitution owed during a
34  fiscal year.  If insufficient moneys are appropriated each fiscal year to pay restitution to such
35  persons, the department shall pay each individual who has received an order awarding
36  restitution a pro rata share of the amount appropriated.  Provided sufficient moneys are
37  appropriated to the department, the amounts owed to such individual shall be paid on June

38  thirtieth of each subsequent fiscal year, until such time as the restitution to the individual has
39  been paid in full.  However, no individual awarded restitution under this subsection shall
40  receive more than **[**thirty-six**] sixty-five** thousand **[**five hundred**]** dollars during each fiscal
41  year.  No interest on unpaid restitution shall be awarded to the individual.  **[**~~No individual who~~
42  ~~has been determined by the court to be actually innocent shall be responsible for the costs of~~
43  ~~care under section 217.831~~**] However, an individual may also be awarded other**
44  **nonmonetary relief, including counseling, housing assistance, and personal financial**
45  **literary assistance**.

46      2.  If the results of the DNA testing confirm the person's guilt, then the person filing
47  for DNA testing under section 547.035, shall:

48      (1)  Be liable for any reasonable costs incurred when conducting the DNA test,
49  including but not limited to the cost of the test.  Such costs shall be determined by the court
50  and shall be included in the findings of fact and conclusions of law made by the court; and

51      (2)  Be sanctioned under the provisions of section 217.262.

52      3.  A petition for payment of restitution under this section may **[**only**]** be filed **only** by
53  the individual determined to be actually innocent or the individual's legal guardian.  No claim
54  or petition for restitution under this section may be filed by the individual's heirs or assigns.
55  An individual's right to receive restitution under this section is not assignable or otherwise
56  transferrable.  The state's obligation to pay restitution under this section shall cease upon the
57  individual's death.  Any beneficiary designation that purports to bequeath, assign, or
58  otherwise convey the right to receive such restitution shall be void and unenforceable.

59      4.  An individual who is determined to be actually innocent of a crime under this
60  chapter shall automatically be granted an order of expungement from the court in which he or
61  she pled guilty or was sentenced to expunge from all official records all recordations of his or
62  her arrest, plea, trial or conviction.  Upon **the court's** granting of the order of expungement,
63  the records and files maintained in any administrative or court proceeding in an associate or
64  circuit division of the court shall be confidential and **[**only**]** available **only** to the parties or by
65  order of the court for good cause shown.  The effect of such order shall be to restore such
66  person to the status he or she occupied prior to such arrest, plea or conviction and as if such
67  event had never taken place.  No person as to whom such order has been entered shall be held
68  thereafter under any provision of any law to be guilty of perjury or otherwise giving a false
69  statement by reason of his or her failure to recite or acknowledge such arrest, plea, trial,
70  conviction or expungement in response to any inquiry made of him or her for any purpose
71  whatsoever and no such inquiry shall be made for information relating to an expungement
72  under this section.

**Section 1.  In the event that any section, provision, clause, phrase, or word of this**
2  **act or the application thereof is declared invalid under the Constitution of the United**

3    **States or the Constitution of the State of Missouri, it is the intent of the general assembly**
4    **that the remaining sections of this act remain in force and effect as far as they are**
5    **capable of being carried into execution as intended by the general assembly.   The**
6    **general assembly hereby declares that it would have passed each section, provision,**
7    **clause, phrase, or word thereof, irrespective of the fact that any one or more sections,**
8    **provisions, clauses, phrases, or words of this act or the application of this act would be**
9    **declared unenforceable, unconstitutional, or invalid.**

[84.175.  1.  Upon recommendation of the chief of police, the board
2    may authorize and provide for the organization of a police reserve force
3    composed of members who receive a service retirement under the provisions
4    of sections 86.200 to 86.366 and who qualify under the provisions of section
5    84.120.  Such reserve force shall be under the command of the chief of police
6    and shall be provided training, equipment, uniforms, and arms as the chief
7    shall direct with the approval of the board.  Members of the reserve force shall
8    possess all of the powers of regular police officers and shall be subject to all
9    laws and regulations applicable to police officers; provided, however, that the
10   city council or other governing body of any such city may in its discretion fix a
11   total in number which the reserve force may not exceed.
12         2.  In event of riot or other emergencies as declared and defined by the
13   mayor, in concurrence with the board, the board, upon recommendation of the
14   chief, may appoint special officers or patrolmen for temporary service in
15   addition to the police reserve force herein provided for, but the length of time
16   for which such officers or patrolmen shall be employed shall be limited to the
17   time during which such emergency shall exist.]

[84.240.   The board of police commissioners shall establish the
2    Bertillon system of identification of criminals and others by means of
3    anthropometric indications, and they are further required to employ such
4    additional assistance as may be necessary to properly conduct and manage this
5    department.]

[84.341.  No elected or appointed official of the state or any political
2    subdivision thereof shall act or refrain from acting in any manner to impede,
3    obstruct, hinder, or otherwise interfere with any member of a municipal police
4    force established under sections 84.343 to 84.346 in the performance of his or
5    her job duties, or with any aspect of any investigation arising from the
6    performance of such job duties.  This section shall not be construed to prevent
7    such officials from acting within the normal course and scope of their
8    employment or from acting to implement sections 84.343 to 84.346.   Any
9    person who violates this section shall be liable for a penalty of two thousand
10   five hundred dollars for each offense and shall forever be disqualified from
11   holding any office or employment whatsoever with the governmental entity
12   the person served at the time of the violation.  The penalty shall not be paid by
13   the funds of any committee as the term committee is defined in section
14   130.011.  This section shall not be construed to interfere with the punishment,

15    ~~under any laws of this state, of a criminal offense committed by such officials,~~
16    ~~nor shall this section apply to duly appointed members of the municipal police~~
17    ~~force, or their appointing authorities, whose conduct is otherwise provided for~~
18    ~~by law.]~~

     ~~[84.342.  1.  It shall be an unlawful employment practice for an official,~~
2    ~~employee, or agent of a municipal police force established under sections~~
3    ~~84.343 to 84.346 to discharge, demote, reduce the pay of, or otherwise retaliate~~
4    ~~against an employee of the municipal police force for reporting to any~~
5    ~~superior, government agency, or the press the conduct of another employee~~
6    ~~that the reporting employee believes, in good faith, is illegal.~~
7    ~~2.  Any employee of the municipal police force may bring a cause of~~
8    ~~action for general or special damages based on a violation of this section.]~~

     ~~[84.343.  1.  Subject to the provisions of sections 84.344 to 84.346, any~~
2    ~~city not within a county may establish a municipal police force for the~~
3    ~~purposes of:~~
4    ~~(1)  Preserving the public peace, welfare, and order;~~
5    ~~(2)  Preventing crime and arresting suspected offenders;~~
6    ~~(3)  Enforcing the laws of the state and ordinances of the city;~~
7    ~~(4)  Exercising all powers available to a police force under generally~~
8    ~~applicable state law; and~~
9    ~~(5)  Regulating and licensing all private watchmen, private detectives,~~
10    ~~and private policemen serving or acting as such in said city.~~
11    ~~2.  Any person who acts as a private watchman, private detective, or~~
12    ~~private policeman in said cities without having obtained a written license from~~
13    ~~said cities is guilty of a class A misdemeanor.]~~

     ~~[84.344.  1.  Notwithstanding any provisions of this chapter to the~~
2    ~~contrary, any city not within a county may establish a municipal police force~~
3    ~~on or after July 1, 2013, according to the procedures and requirements of this~~
4    ~~section.  The purpose of these procedures and requirements is to provide for an~~
5    ~~orderly and appropriate transition in the governance of the police force and~~
6    ~~provide for an equitable employment transition for commissioned and civilian~~
7    ~~personnel.~~
8    ~~2.  Upon the establishment of a municipal police force by a city under~~
9    ~~sections 84.343 to 84.346, the board of police commissioners shall convey,~~
10    ~~assign, and otherwise transfer to the city title and ownership of all~~
11    ~~indebtedness and assets, including, but not limited to, all funds and real and~~
12    ~~personal property held in the name of or controlled by the board of police~~
13    ~~commissioners created under sections 84.010 to 84.340.  The board of police~~
14    ~~commissioners shall execute all documents reasonably required to accomplish~~
15    ~~such transfer of ownership and obligations.~~
16    ~~3.  If the city establishes a municipal police force and completes the~~
17    ~~transfer described in subsection 2 of this section, the city shall provide the~~
18    ~~necessary funds for the maintenance of the municipal police force.~~
19    ~~4.  Before a city not within a county may establish a municipal police~~
20    ~~force under this section, the city shall adopt an ordinance accepting~~

21  responsibility, ownership, and liability as successor-in-interest for contractual
22  obligations, indebtedness, and other lawful obligations of the board of police
23  commissioners subject to the provisions of subsection 2 of section 84.345.
24          5.  A city not within a county that establishes a municipal police force
25  shall initially employ, without a reduction in rank, salary, or benefits, all
26  commissioned and civilian personnel of the board of police commissioners
27  created under sections 84.010 to 84.340 that were employed by the board
28  immediately prior to the date the municipal police force was established.  Such
29  commissioned personnel who previously were employed by the board may
30  only be involuntarily terminated by the city not within a county for cause.  The
31  city shall also recognize all accrued years of service that such commissioned
32  and civilian personnel had with the board of police commissioners.  Such
33  personnel shall be entitled to the same holidays, vacation, and sick leave they
34  were entitled to as employees of the board of police commissioners.
35          6.  Commissioned and civilian personnel of a municipal police force
36  established under this section shall not be subject to a residency requirement of
37  retaining a primary residence in a city not within a county but may be required
38  to maintain a primary residence located within a one hour response time.
39          7.  The commissioned and civilian personnel who retire from service
40  with the board of police commissioners before the establishment of a
41  municipal police force under subsection 1 of this section shall continue to be
42  entitled to the same pension benefits provided under chapter 86 and the same
43  benefits set forth in subsection 5 of this section.
44          8.  If the city not within a county elects to establish a municipal police
45  force under this section, the city shall establish a separate division for the
46  operation of its municipal police force.  The civil service commission of the
47  city may adopt rules and regulations appropriate for the unique operation of a
48  police department.  Such rules and regulations shall reserve exclusive
49  authority over the disciplinary process and procedures affecting commissioned
50  officers to the civil service commission; however, until such time as the city
51  adopts such rules and regulations, the commissioned personnel shall continue
52  to be governed by the board of police commissioner's rules and regulations in
53  effect immediately prior to the establishment of the municipal police force,
54  with the police chief acting in place of the board of police commissioners for
55  purposes of applying the rules and regulations.  Unless otherwise provided for,
56  existing civil service commission rules and regulations governing the appeal of
57  disciplinary decisions to the civil service commission shall apply to all
58  commissioned and civilian personnel.  The civil service commission's rules
59  and regulations shall provide that records prepared for disciplinary purposes
60  shall be confidential, closed records available solely to the civil service
61  commission and those who possess authority to conduct investigations
62  regarding disciplinary matters pursuant to the civil service commission's rules
63  and regulations.  A hearing officer shall be appointed by the civil service
64  commission to hear any such appeals that involve discipline resulting in a
65  suspension of greater than fifteen days, demotion, or termination, but the civil
66  service commission shall make the final findings of fact, conclusions of law,
67  and decision which shall be subject to any right of appeal under chapter 536.

SS #2 SCS HCS #2 HB 495                    62

68          9. A city not within a county that establishes and maintains a
69    municipal police force under this section:
70          (1) Shall provide or contract for life insurance coverage and for
71    insurance benefits providing health, medical, and disability coverage for
72    commissioned and civilian personnel of the municipal police force to the same
73    extent as was provided by the board of police commissioners under section
74    84.160;
75          (2) Shall provide or contract for medical and life insurance coverage
76    for any commissioned or civilian personnel who retired from service with the
77    board of police commissioners or who were employed by the board of police
78    commissioners and retire from the municipal police force of a city not within a
79    county to the same extent such medical and life insurance coverage was
80    provided by the board of police commissioners under section 84.160;
81          (3) Shall make available medical and life insurance coverage for
82    purchase to the spouses or dependents of commissioned and civilian personnel
83    who retire from service with the board of police commissioners or the
84    municipal police force and deceased commissioned and civilian personnel who
85    receive pension benefits under sections 86.200 to 86.366 at the rate that such
86    dependent's or spouse's coverage would cost under the appropriate plan if the
87    deceased were living; and
88          (4) May pay an additional shift differential compensation to
89    commissioned and civilian personnel for evening and night tours of duty in
90    an amount not to exceed ten percent of the officer's base hourly rate.
91          10. A city not within a county that establishes a municipal police force
92    under sections 84.343 to 84.346 shall establish a transition committee of five
93    members for the purpose of: coordinating and implementing the transition of
94    authority, operations, assets, and obligations from the board of police
95    commissioners to the city; winding down the affairs of the board; making
96    nonbinding recommendations for the transition of the police force from the
97    board to the city; and other related duties, if any, established by executive
98    order of the city's mayor. Once the ordinance referenced in this section is
99    enacted, the city shall provide written notice to the board of police
100   commissioners and the governor of the state of Missouri. Within thirty
101   days of such notice, the mayor shall appoint three members to the committee,
102   two of whom shall be members of a statewide law enforcement association
103   that represents at least five thousand law enforcement officers. The remaining
104   members of the committee shall include the police chief of the municipal
105   police force and a person who currently or previously served as a
106   commissioner on the board of police commissioners, who shall be appointed
107   to the committee by the mayor of such city.]

          [84.345. 1. Except as required for the board of police commissioners
2     to conclude its affairs and pursue legal claims and defenses, upon the
3     establishment of a municipal police force, the terms of office of the
4     commissioners of the board of police created under sections 84.020 and
5     84.030 shall expire, and the provisions of sections 84.010 to 84.340 shall not
6     apply to any city not within a county or its municipal police force as of such
7     date. The board shall continue to operate, if necessary, to wind down the

8    board's affairs until the transfer of ownership and obligations under subsection
9    2 of section 84.344 has been completed.  During such time, the board of police
10   commissioners shall designate and authorize its secretary to act on behalf of
11   the board for purposes of performing the board's duties and any other actions
12   incident to the transfer and winding down of the board's affairs.
13           2.  For any claim, lawsuit, or other action arising out of actions
14   occurring before the date of completion of the transfer provided under
15   subsection 2 of section 84.344, the state shall continue to provide legal
16   representation as set forth in section 105.726, and the state legal expense fund
17   shall continue to provide reimbursement for such claims under section
18   105.726.  This subsection applies to all claims, lawsuits, and other actions
19   brought against any commissioner, police officer, employee, agent,
20   representative, or any individual or entity acting or purporting to act on its
21   or their behalf.
22           3.  Notwithstanding any other provision of law, rule, or regulation to
23   the contrary, any city not within a county that establishes a municipal police
24   force under sections 84.343 to 84.346 shall not be restricted or limited in any
25   way in the selection of a police chief or chief of the division created under
26   subsection 8 of section 84.344.
27           4.  It shall be the duty of the sheriff for any city not within a county,
28   whenever called upon by the police chief of the municipal police force, to act
29   under the police chief's control for the preservation of the public peace and
30   quiet; and, whenever the exigency or circumstances may, in the police chief's
31   judgment, warrant it, said police chief shall have the power to assume the
32   control and command of all local and municipal conservators of the peace of
33   the city, whether sheriff, constable, policemen or others, and they shall act
34   under the orders of the said police chief and not otherwise.]

         [84.346.  Any police pension system created under chapter 86 for the
2    benefit of a police force established under sections 84.010 to 84.340 shall
3    continue to be governed by chapter 86, and shall apply to any police force
4    established under section 84.343 to 84.346.  Other than any provision that
5    makes chapter 86 applicable to a municipal police force established under
6    section 84.343 to 84.346, nothing in sections 84.343 to 84.346 shall be
7    construed as limiting or changing the rights or benefits provided under chapter
8    86.]

         [84.347.  Notwithstanding the provisions of section 1.140 to the
2    contrary, the provisions of sections 84.343 to 84.346 shall be nonseverable.  If
3    any provision of sections 84.343 to 84.346 is for any reason held to be invalid,
4    such decision shall invalidate all of the remaining provisions of this act.]

         [217.825.  Sections 217.825 to 217.841 shall be known and may be
2    cited as the "Missouri Incarceration Reimbursement Act".]

         [217.827.  As used in sections 217.825 to 217.841, the following terms
2    shall mean:

SS #2 SCS HCS #2 HB 495                    64

3          (1) (a) "Assets", property, tangible or intangible, real or personal,
4     belonging to or due an offender or a former offender, including income or
5     payments to such offender from Social Security, workers' compensation,
6     veterans' compensation, pension benefits, previously earned salary or wages,
7     bonuses, annuities, retirement benefits, or from any other source whatsoever,
8     including any of the following:
9          a.  Money or other tangible assets received by the offender as a result
10    of a settlement of a claim against the state, any agency thereof, or any claim
11    against an employee or independent contractor arising from and in the scope of
12    said employee's or contractor's official duties on behalf of the state or any
13    agency thereof;
14         b.  A money judgment received by the offender from the state as a
15    result of a civil action in which the state, an agency thereof or any state
16    employee or independent contractor where such judgment arose from a claim
17    arising from the conduct of official duties on behalf of the state by said
18    employee or subcontractor or for any agency of the state;
19         c.  A current stream of income from any source whatsoever, including a
20    salary, wages, disability, retirement, pension, insurance or annuity benefits or
21    similar payments;
22         (b) "Assets" shall not include:
23         a.  The homestead of the offender up to fifty thousand dollars in value;
24         b.  Money saved by the offender from wages and bonuses up to two
25    thousand five hundred dollars paid the offender while he or she was confined
26    to a state correctional center;
27         (2) "Cost of care", the cost to the department of corrections for
28    providing transportation, room, board, clothing, security, medical, and other
29    normal living expenses of offenders under the jurisdiction of the department,
30    as determined by the director of the department;
31         (3) "Department", the department of corrections of this state;
32         (4) "Director", the director of the department;
33         (5) "Offender", any person who is under the jurisdiction of the
34    department and is confined in any state correctional center or is under the
35    continuing jurisdiction of the department;
36         (6) "State correctional center", a facility or institution which houses an
37    offender population under the jurisdiction of the department.   State
38    correctional center includes a correctional camp, community correction
39    center, honor center, or state prison.]


          [217.829.  1.  The department shall develop a form which shall be used
2     by the department to obtain information from all offenders regarding their
3     assets.
4          2.  The form shall be submitted to each offender as of the date the form
5     is developed and to every offender who thereafter is sentenced to
6     imprisonment under the jurisdiction of the department.   The form may be
7     resubmitted to an offender by the department for purposes of obtaining current
8     information regarding assets of the offender.
9          3.  Every offender shall complete the form or provide for completion of
10    the form and the offender shall swear or affirm under oath that to the best of

SS #2 SCS HCS #2 HB 495                    65

11      his or her knowledge the information provided is complete and accurate.  Any
12      person who shall knowingly provide false information on said form to state
13      officials or employees shall be guilty of the crime of making a false affidavit
14      as provided by section 575.050.
15              4.  Failure by an offender to fully, adequately and correctly complete
16      the form may be considered by the parole board for purposes of a parole
17      determination, and in determining an offender's parole release date or
18      eligibility and shall constitute sufficient grounds for denial of parole.
19              5.  Prior to release of any offender from imprisonment, and again prior
20      to release from the jurisdiction of the department, the department shall request
21      from the offender an assignment of ten percent of any wages, salary, benefits
22      or payments from any source.  Such an assignment shall be valid for the longer
23      period of five years from the date of its execution, or five years from the date
24      that the offender is released from the jurisdiction of the department or any of
25      its divisions or agencies.  The assignment shall secure payment of the total cost
26      of care of the offender executing the assignment.  The restrictions on the
27      maximum amount of earnings subject to garnishment contained in section
28      525.030 shall apply to earnings subject to assignments executed pursuant to
29      this subsection.]

        [217.831.  1.  The director shall forward to the attorney general a report
2       on each offender containing a completed form pursuant to the provisions of
3       section 217.829 together with all other information available on the assets of
4       the offender and an estimate of the total cost of care for that offender.
5               2.  The attorney general may investigate or cause to be investigated all
6       reports furnished pursuant to the provisions of subsection 1 of this section.
7       This investigation may include seeking information from any source that may
8       have relevant information concerning an offender's assets.  The director shall
9       provide all information possessed by the department and its divisions and
10      agencies, upon request of the attorney general, in order to assist the attorney
11      general in completing his duties pursuant to sections 217.825 to 217.841.
12              3.  If the attorney general upon completing the investigation under
13      subsection 2 of this section has good cause to believe that an offender or
14      former offender has sufficient assets to recover not less than ten percent of the
15      estimated cost of care of the offender or ten percent of the estimated cost of
16      care of the offender for two years, whichever is less, or has a stream of income
17      sufficient to pay such amounts within a five-year period, the attorney general
18      may seek to secure reimbursement for the expense of the state of Missouri for
19      the cost of care of such offender or former offender.
20              4.  The attorney general, or any prosecuting attorney on behalf of the
21      attorney general, shall not bring an action pursuant to this section against an
22      offender or former offender after the expiration of five years after his release
23      from the jurisdiction of the department.]

        [217.833.  1.  Not more than ninety percent of the value of the assets of
2       the offender may be used for purposes of securing costs and reimbursement
3       pursuant to the provisions of sections 217.825 to 217.841.

SS #2 SCS HCS #2 HB 495                    66

4          2.  The amount of reimbursement sought from an offender shall not be
5     in excess of the per capita cost for care for maintaining offenders in the state
6     correctional center in which the offender is housed for the period or periods
7     such offender is an offender in a state correctional center.]

      [217.835.  1.  The circuit court shall have exclusive jurisdiction over all
2     proceedings seeking reimbursement from offenders pursuant to the provisions
3     of sections 217.825 to 217.841.  The attorney general may file a complaint in
4     the circuit court for the county or city from which a prisoner was sentenced or
5     in the circuit court in the county or city of the office of the director of the
6     department, against any person under the jurisdiction of the department stating
7     that the person is or has been an offender in a state correctional center, that
8     there is good cause to believe that the person has assets, and praying that the
9     assets be used to reimburse the state for the expenses incurred or to be
10    incurred, or both, by the state for the cost of care of the person as an offender.
11         2.  Upon the filing of the complaint under subsection 1 of this section,
12    the court shall issue an order to show cause why the prayer of the complainant
13    should not be granted.  The complaint and order shall be served upon the
14    person personally, or, if the person is confined in a state correctional center, by
15    registered mail addressed to the person in care of the chief administrator of the
16    state correctional center where the person is housed, at least thirty days before
17    the date of hearing on the complaint and order.
18         3.  At the time of the hearing on the complaint and order, if it appears
19    that the person has any assets which ought to be subjected to the claim of the
20    state pursuant to the provisions of sections 217.825 to 217.841, the court shall
21    issue an order requiring any person, corporation, or other legal entity
22    possessed or having custody of such assets, to appropriate and apply such
23    assets or a portion thereof to satisfy such claim.
24         4.  At the hearing on the complaint and order and before entering any
25    order on behalf of the state against the defendant, the court shall take into
26    consideration any legal obligation of the defendant to support a spouse, minor
27    children, or other dependents and any moral obligation to support dependents
28    to whom the defendant is providing or has in fact provided support.
29         5.  If the person, corporation, or other legal entity shall neglect or
30    refuse to comply with an order issued pursuant to subsection 3 of this section,
31    the court shall order the person, corporation, or other legal entity to appear
32    before the court at such time as the court may direct and to show cause why the
33    person, corporation, or other legal entity should not be considered in contempt
34    of court.
35         6.  If, in the opinion of the court, the assets of the prisoner are sufficient
36    to pay the cost of the proceedings undertaken pursuant to the provisions of
37    sections 217.825 to 217.841, the prisoner shall be liable for those costs upon
38    order of the court.]

      [217.837.  1.  Except as provided in subsection 3 of this section, the
2     attorney general may use any remedy, interim order, or enforcement procedure
3     allowed by law or court rule including an ex parte restraining order to restrain
4     the prisoner or any other person or legal entity in possession or having custody

5    ~~of the estate of the prisoner from disposing of certain property in avoidance of~~
6    ~~an order issued pursuant to the provisions of section 217.835.~~
7    ~~2. To protect and maintain assets pending resolution of proceedings~~
8    ~~initiated pursuant to the provisions of section 217.835, the court, upon request,~~
9    ~~may appoint a receiver.~~
10   ~~3. The attorney general or a prosecuting attorney shall not enforce any~~
11   ~~judgment obtained pursuant to the provisions of section 217.835 by means of~~
12   ~~execution against the homestead of the prisoner.~~
13   ~~4. The state's right to recover the cost of incarceration pursuant to an~~
14   ~~order issued pursuant to the provisions of section 217.835 shall have priority~~
15   ~~over all other liens, debts, or other incumbrances against real property or any~~
16   ~~other assets which are part of a prisoner's estate.]~~

     ~~[217.839. 1. The attorney general of this state shall enforce the~~
2    ~~provisions of sections 217.825 to 217.841, except that the attorney general~~
3    ~~may request the prosecuting attorney of the county or city in which the~~
4    ~~offender was sentenced or the prosecuting attorney of the county or city in~~
5    ~~which any asset of an offender is located to make an investigation or assist in~~
6    ~~legal proceedings undertaken pursuant to the provisions of sections 217.825 to~~
7    ~~217.841.~~
8    ~~2. The sentencing judge, the sheriff, the county or city, the chief~~
9    ~~administrator of the state correctional center, and the state treasurer shall~~
10   ~~furnish to the attorney general or prosecuting attorney all information and~~
11   ~~assistance possible to enable the attorney general or prosecuting attorney to~~
12   ~~secure reimbursement for the state pursuant to the provisions of sections~~
13   ~~217.825 to 217.841.~~
14   ~~3. Notwithstanding the provisions of any other law protecting the~~
15   ~~confidentiality of any information possessed by the state, its officials and~~
16   ~~agencies, the secretary of state, the director of the department of revenue, the~~
17   ~~director of the department of social services, the director of the department of~~
18   ~~corrections, the director of the department of labor and industrial relations, the~~
19   ~~director of the department of public safety, and the commissioner of~~
20   ~~administration, and each division or agency within or assigned to such~~
21   ~~departments, shall provide the attorney general or prosecuting attorney with all~~
22   ~~information requested pursuant to the provisions of sections 217.825 to~~
23   ~~217.841.~~
24   ~~4. Any county or municipal official having custody of records of the~~
25   ~~estate or real property of any offender or former offender shall surrender said~~
26   ~~records or certified copies thereof without fee to the attorney general or~~
27   ~~prosecuting attorney who request such records pursuant to the provisions of~~
28   ~~sections 217.825 to 217.841.]~~

     ~~[217.841. 1. The costs of any investigations shall be paid from the~~
2    ~~reimbursements secured pursuant to the provisions of sections 217.825 to~~
3    ~~217.841. The investigative costs shall be presumed to be twenty percent of the~~
4    ~~reimbursements recovered, unless the attorney general shall demonstrate to the~~
5    ~~court otherwise. All reimbursements collected shall be paid to the "Inmate~~
6    ~~Incarceration Reimbursement Act Revolving Fund", which is hereby~~

SS #2 SCS HCS #2 HB 495                68

7      established in the state treasury.  Moneys in the inmate incarceration
8      reimbursement act revolving fund shall be appropriated to the attorney general
9      in order to defray the costs of the attorney general in connection with his duties
10     provided by sections 217.825 to 217.841; and all remaining balances shall be
11     appropriated to the department for purposes of construction and operation of
12     state correctional facilities.  The provisions of section 33.080 notwithstanding,
13     moneys in the inmate incarceration reimbursement act revolving fund shall not
14     lapse, be transferred or appropriated to or placed to the credit of the general
15     revenue fund or any other fund of the state.
16          2.  The state treasurer may determine the amount due the state for the
17     cost of care of an offender and render statements thereof and such sworn
18     statements shall be considered prima facie evidence of the amount due.]

      [574.050.  1.  A person commits the offense of rioting if he or she
2      knowingly assembles with six or more other persons and agrees with such
3      persons to violate any of the criminal laws of this state or of the United States
4      with force or violence, and thereafter, while still so assembled, does violate
5      any of said laws with force or violence.
6          2.  The offense of rioting is a class A misdemeanor.]

      Section B.  In order to ensure the continued operation of a police force in the city of
2   St. Louis for the safety and well being of the citizens of the city of St. Louis, the repeal of
3   sections 84.175, 84.240, 84.341, 84.342, 84.343, 84.344, 84.345, 84.346, and 84.347, the
4   repeal and reenactment of sections 84.020, 84.030, 84.100, 84.150, 84.160, 84.170 and
5   105.726, and the enactment of sections 84.225 and 84.325 of this act is deemed necessary for
6   the immediate preservation of the public health, welfare, peace, and safety, and is hereby
7   declared to be an emergency act within the meaning of the constitution, and the repeal of
8   sections 84.175, 84.240, 84.341, 84.342, 84.343, 84.344, 84.345, 84.346, and 84.347, the
9   repeal and reenactment of sections 84.020, 84.030, 84.100, 84.150, 84.160, 84.170 and
10  105.726, and the enactment of sections 84.225 and 84.325 of this act shall be in full force and
11  effect upon its passage and approval.

✓