# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

CITY OF ST. LOUIS and MEGAN E. GREEN,

     Plaintiffs,

v.

STATE OF MISSOURI,

     Defendant.

Case No. 4:25-CV-00498

## PLAINTIFF GREEN AND CHUCK HATFIELD'S RESPONSE TO COURT'S MEMORANDUM AND ORDER (TO SHOW CAUSE)

This Court ordered Plaintiffs and their counsel to show cause why certain conduct described in the Court's Order did not violate Fed. R. Civ. P. 11(b). *See* Doc. [6].[1] Plaintiff Green (through counsel) and her counsel, Chuck Hatfield, submit this response as directed.

Counsel takes full responsibility for seeking to invoke this Court's jurisdiction. Plaintiff Green has First Amendment and state constitutional claims against the State of Missouri (and its officials) which she wishes to assert in order to protect her rights as a taxpayer in the City of St. Louis and as the President of the Board of Aldermen. Her suit here was not for an improper purpose, but to pursue claims that counsel and Plaintiff Green believe are meritorious. Green intends to file claims that are the subject of this lawsuit in state court, rather than federal court, to avoid the jurisdictional problems the Court highlighted in its orders.

Any error here on the part of Plaintiff Green arose from Counsel's review of the Complaint pre-filing and the undersigned's signature thereon; it is in no way attributable to

---

[1] "Before imposing Rule 11 sanctions on its own initiative, the district court must first enter an order describing the specific conduct that appears to violate Rule 11(b) . . . ." *In re Sanford Law Firm*, 106 F.4th 706, 716 (8th Cir. 2024) (quotations, alterations, and emphasis removed). This response is organized to address specific conduct identified by the Court.

Plaintiff Green herself. Although there are legitimate and sound bases to invoke federal jurisdiction in connection with Green's First Amendment claims, those claims need to be stated against individual officials, and not the State of Missouri, to continue in federal court. Counsel should have recognized this deficiency in the Complaint prefiling, to be sure that it properly invoked federal jurisdiction or contained a good-faith basis for modification or extension of existing law.

In the below response, Green and her Counsel explain for the Court how this deficiency arose and the reasons that they did not file a response to the Court's prior order. Any sanction imposed under Rule 11 "'must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated.'" *Kezhaya v. City of Belle Plaine, Minnesota*, 78 F.4th 1045, 1049 (8th Cir. 2023) (quoting Rule 11(c)(4)). The undersigned suggests that no additional sanction is necessary to deter repetition of the conduct at issue—counsel is humbled by the experience and will not let it happen again.

## I. THE INITIAL FILING

Plaintiff Green was and is the President of the St. Louis Board of Aldermen. She was elected in a city-wide vote in November of 2022 and re-elected to a four-year term in April of 2023. In that position, Green has carefully monitored efforts to take control of the City of St. Louis police force away from local elected officials and give that control to a State Board.[2] Missouri's Governor signed a law on March 26, 2025, H.B. 495, to shift control of the City of St. Louis police force away from the St. Louis Board of Aldermen and provide that control to the state. (H.B.495, Ex. 1 to Complaint. Doc [1-1]). Green communicated with the then Mayor of St.

---

[2] In a state-wide vote in 2012, Missouri voters shifted control of the City of St. Louis police force away from a state board to local officials. The recently enacted H.B. 495 reversed that policy choice.

Louis and the then City Counselor about filing a lawsuit challenging the constitutionality of H.B. 495. The Mayor, the City Counselor, and Green all desired to go forward with a constitutional challenge to the Bill. The City Counselor's Office set about drafting a lawsuit to be filed in this Court.[3]

As the discussions progressed, the City and Green determined that Green should bring the lawsuit both in her official capacity, as President of the Board of Aldermen, and in her personal capacity as a City resident and taxpayer. The undersigned counsel, Charles (Chuck) Hatfield, agreed to represent Green in her personal capacity.

Green's First Amendment claim focused on H.B. 495's threatened punishment for hindering or obstructing the transition to state control, which included possible forfeiture of her duly-elected office. Green also sought to invalidate portions of the law based on Missouri's "Hancock Amendment," since the law in question shifts the costs of state functions to local governments. As the Supreme Court of Missouri has held, Hancock Amendment claims against the State of Missouri may be pursued jointly by the affected City and an individual taxpayer, even though it is the taxpayer who has standing to pursue the claim. *See City of St. Louis v. State of Missouri*, 682 S.W.3d 387 (Mo. 2024).

When the undersigned was briefed on the objectives of the lawsuit, he determined that the City and Green sought to pursue litigation for a proper purpose—attempting to overturn a law they believed to violate the First Amendment rights of City officials and Missouri's Hancock Amendment—and that there was (and is) a basis in law and fact for Plaintiff Green's claims. *See,*

---

[3] At the time this suit was filed, Green and counsel were coordinating with a Mayor and City Counselor who had authority to act on behalf of the City. Shortly after the suit was filed, new individuals assumed both of those roles. Counsel understands that the City will file its own response to the show cause order in which it will generally affirm its belief that the claims the City filed were, and are, proper claims.

*e.g.*, *Survivors Network of Those Abused by Priests, Inc. v. Joyce*, 779 F.3d 785, 794 (8th Cir. 2015) (explaining law prohibiting profane speech outside houses of worship was content-based and had chilling effect on speech and that "[t]he First Amendment guarantees that 'the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable'"); *City of St. Louis v. State of Missouri*, 682 S.W.3d 387 (Mo. 2024) (City and co-Plaintiff taxpayer stated a claim for violations of the Hancock Amendment).

When it came to invoking federal court jurisdiction over these claims, counsel had previous experience suing to enjoin enforcement of state laws in federal court and determined that bringing a claim that a state law violated the First Amendment was proper in federal court. *See Free & Fair Election Fund v. Mo. Ethics Comm'n*, 903 F.3d 759 (8th Cir. 2018); *Miller v. Ziegler*, 109 F.4th 1045 (8th Cir. 2024). Counsel also reviewed the pendent jurisdiction of the Court to consider the state-law claims and believed the Court to have such jurisdiction. *See Royal Canin U.S.A. v. Wullschleger*, 604 U.S. 22 (2025) (discussing federal jurisdiction over state-law claims). The undersigned believed, as a general proposition, that this Court could exercise supplemental jurisdiction over the state law Hancock Amendment claim.

The City Counselor's office took the laboring oar in drafting the Complaint.[4] When the undersigned reviewed the draft complaint prefiling—he overlooked that the complaint did not include a request for relief directed at a state official (rather than the State itself). A plaintiff may properly ask the federal courts to enjoin enforcement of an unconstitutional state law, but must do so by naming a state official who is charged with enforcing that law. *See Ex parte Young*, 209

---

[4] An attorney from the City Counselor's office, Nathan Puckett, also signed the Complaint in this case. Mr. Puckett is a relatively less-experienced attorney who understandably took direction from more senior attorneys at the City Counselor's office and also relied on undersigned as a more experienced lawyer. Undersigned respectfully suggests that Mr. Puckett should be afforded particular grace in this matter.

U.S. 123 (1908); *Minnesota RFL Republican Farmer Labor Caucus v. Freeman*, 33 F.4th 985, 989-90 (8th Cir. 2022).

A federal claim brought solely against a state agency must be dismissed, although the issue can sometimes be missed. *Williams v. State,* 973 F.2d 599, 599 (8th Cir. 1992) (reversing district court's denial of a motion to dismiss when "the State of Missouri" was the sole defendant in a §1983 action); *Wolk v. City of Brooklyn Ctr.*, 107 F.4th 854, 858 (8th Cir. 2024) (*sua sponte* reversing District Court's denial of a motion to dismiss "the Minnesota Department of Natural Resources" on Eleventh Amendment grounds). The undersigned should have confirmed that the Complaint properly invoked the Court's jurisdiction by naming a state official responsible for enforcement of the law Green is challenging before the Complaint was filed. That was counsel's mistake, for which he is solely responsible.

## II.     FAILURE TO RESPOND TO THE COURT'S EARLIER ORDER

After the Court pointed out the above-referenced oversight, it generously gave counsel and the parties the opportunity to address the facial pleading error. *See* Doc. [5]. Rather than outright dismissing, the Court afforded the parties an opportunity to 1) show cause why the action should not be dismissed or 2) file an amended complaint addressing the jurisdictional issue. The Court further specified that the consequences for failure to do one of those two things would be "the dismissal of this action without prejudice for lack of subject matter jurisdiction." Doc. [5] at 3.

After receiving and reviewing the Court's order, Counsel knew that the Court was right—there was no way to show cause why the Complaint as originally filed should not be dismissed for lack of jurisdiction. Amending the Complaint to replace the State of Missouri as a Defendant with the Missouri Attorney General (who is charged with enforcing Missouri laws) would have

cleared the Eleventh Amendment hurdle. *See, e.g.*, *Carver v. Nixon*, 72 F.3d 633 (8th Cir. 1995) (abrogated on other grounds); *see also Ex parte Young*, 209 U.S. 123 (1908); *Minnesota RFL Republican Farmer Labor Caucus*, 33 F.4th at 989-90.

The parties to the original Complaint could not reach agreement on whether and how to amend the Complaint in response to the Court's order. Faced with the option of amending the Complaint to have Green proceed on her own portion of the Complaint in federal court, Green decided to pursue her claims in state court, particularly in light of the possibility that this Court could abstain from exercising supplemental jurisdiction over her state court claims even if the federal court were to maintain the case for purposes of the federal claims. *Doe v. McCulloch,* 835 F.3d 785, 788 (8th Cir. 2016).

Missouri has specifically waived sovereign immunity and authorized suits for violation of the Hancock Amendment. Mo. Const. art. X, §23. The state courts are well-suited to decide those claims. Missouri Courts will also entertain federal claims. *See Trout v. State,* 231 S.W.3d 140, 142 (Mo. 2007) (Trout brought a First Amendment claim and a purely state law claim). After consultation with the undersigned, Plaintiff Green decided that dismissal without prejudice was her best option. The undersigned and Green also interpreted the Court's Order to mean that if they did nothing, the Court would dismiss this matter without prejudice for lack of subject matter jurisdiction. Plaintiff intends to file essentially the same two claims in Missouri state court as soon as this case is dismissed.[5]

---

[5] Green will be filing a notice of dismissal without prejudice in this matter. Fed. R. Civ. P. 41 (a). That filing will, of course, not alter this Court's authority over the parties and the issues raised in the Court's order. *Cooter & Gell v. Hartmax Corp,* 496 U.S. 384, 395 (1990).

Counsel now recognizes that he should have advised the Court of this decision in order to avoid requiring the Court to spend additional time on this matter. Counsel apologizes to the Court for not doing so and meant no disrespect to the Court.

### III. GREEN HAS LEGITIMATE CLAIMS TO PURSUE

Plaintiff Green has two good-faith issues for which she seeks redress. First, she has plausibly alleged that certain portions of the challenged law violate her First Amendment rights and would negatively impact her ability to function as a City official. First Amendment standing is analyzed under "lenient" and "forgiving" standards. *Turtle Island Foods, SPC v. Thompson*, 992 F.3d 694, 699-700 (8th Cir. 2021). A plaintiff may claim First Amendment violations due to "threatened enforcement" or because the mere existence of the statute makes a plaintiff "self-censor." *Dakotans for Health v. Noem*, 52 F.4th 381, 386 (8th Cir. 2022).

Second, Plaintiff has plausibly alleged a valid state-law claim for violations of Missouri's prohibition on the State shifting a fiscal burden from the state to local officials. *Rolla 31 Sch. Dist. v. State of Missouri*, 837 S.W.2d 1 (Mo. 1992); *City of Jefferson v. Mo. Dep't of Nat. Res.*, 863 S.W.2d 844 (Mo. 1993); *Sch. Dist. of Kansas City v. State*, 317 S.W.3d 599, 611 (Mo. 2010); *Brooks v. State of Missouri*, 128 S.W.3d 844 (Mo. 2004); Mo. Const. art. X, §21.[6]

---

[6] Footnote 2 of Doc. [6] raises concerns with Plaintiffs' prayer for relief, which requests a permanent injunction of the State Takeover Law provisions. As the Court notes, severability is a matter of state law. Under Missouri law, statutes are severable "unless the court finds the valid provisions of the statute are so essentially and inseparably connected with, and so dependent upon, the void provision that it cannot be presumed the legislature would have enacted the valid provisions without the void one; or unless the court finds that the valid provisions, standing alone, are incomplete and are incapable of being executed in accordance with legislative intent." § 1.140, RSMo. If the Court had found any of the provisions unconstitutional, Green would have an opportunity to argue that the provisions were not severable. That can be a complicated and hotly contested issue. *See, e.g.*, *Wilson v. City of St. Louis*, 662 S.W.3d 749 (Mo. 2023) (analyzing severability of unconstitutional provision). Missouri Courts do not always sever unconstitutional portions of a statute. *See, e.g.*, *Weinschenk v. State*, 203 S.W.3d 201, 220 (Mo. 2006) (voter ID law unconstitutional and not severable); *Mo. Nat'l Educ. Ass'n v. Mo. Dep't of*

## IV.     A WORD ABOUT SANCTIONS

Plaintiff Green and the undersigned hope that the above explanation shows cause that sanctions are not warranted here. Should the Court not be satisfied with this response, the undersigned would appreciate the opportunity to appear in person to answer any questions and address any outstanding concerns the Court may have. Plaintiff Green and the undersigned also request notice of the type of sanction the Court is considering. *In re Sanford Law Firm*, 106 F.4th at 717 (noting that "[p]articularized notice may be of critical importance when a lawyer or firm's reputation is at stake because sanctions act as a symbolic statement about the quality and integrity of an attorney's work—a statement which may have a tangible effect upon the attorney's career." (quotations omitted)).

The undersigned is certainly embarrassed by his oversight. His reputation as an attorney has already been tarnished and the mere consideration of sanctions has drawn public attention. *See Federal Judge Issues Scathing Order to Attorneys in St. Louis Police Control Lawsuit*, St. Louis Public Radio ([https://www.stlpr.org/government-politics-issues/2025-04-24/federal-judge-issues-scathing-order-to-attorneys-in-st-louis-police-control-lawsuit](https://www.stlpr.org/government-politics-issues/2025-04-24/federal-judge-issues-scathing-order-to-attorneys-in-st-louis-police-control-lawsuit)) (noting that "several of [the Court's footnotes in Doc [6]] were especially harsh toward Chuck Hatfield, who is representing Green in the case); *Judge may sanction city for 'slipshod' suit against state control*, St. Louis Magazine ([https://www.stlmag.com/news/matthew-schelp-state-control-lawsuit/](https://www.stlmag.com/news/matthew-schelp-state-control-lawsuit/)) (opining that the Court's mention of undersigned's "accolades" were meant "to bury him"). The sting of this

---

*Labor & Indus. Relations*, 623 S.W.3d 585, 587 (Mo. 2021) (scheme that effectively disfavored non-public safety labor organizations violated public employees' right to bargain collectively and was not severable). The Court also raised concerns about the "writ of erasure" tenor of Plaintiff's request for a permanent injunction of state statutes. The Missouri Supreme Court quite recently addressed that issue, which should mitigate such concerns. *City of Normandy v. Kehoe*, No. SC100295, __S.W.3d __, 2025 WL 1117732, at *4 n.4 (Mo. Apr. 15, 2025).

negative publicity is sufficient to deter repetition of any similar oversight by undersigned counsel.

By: /s/ Charles W. Hatfield
    Charles W. Hatfield        #40363 (MO)
    **Stinson LLP**
    230 W. McCarty Street
    Jefferson City, Missouri 65101
    (573) 636-6827 (telephone)
    chuck.hatfield@stinson.com

    *Attorney for Plaintiff Megan E. Green*

## CERTIFICATE OF SERVICE

I hereby certify that on April 30, 2025, I electronically filed the foregoing with the Clerk of the Court using the Court's eFiling system which sent notification of such filing to the counsel of record.

/s/ Charles W. Hatfield
Attorney for Plaintiff Megan E. Green

9